
DA 07-0271

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 125

U.S. WEST, INC.,

        Petitioner and Appellant,

   v.

DEPARTMENT OF REVENUE,
STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 06-810,
Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Jock O. Anderson and Dennis R. Lopach, Gough, Shanahan,
Johnson & Waterman, Helena, Montana

      For Appellee:

           Brendan R. Beatty, Special Assistant Attorney General,
Department of Revenue, Helena, Montana

                           Submitted on Briefs:  January 4, 2008

                                     Decided:  April 18, 2008

Filed:

                           _____
                                     Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Following an unfavorable ruling from the State Tax Appeal Board ("STAB"), U.S. West, Inc., filed a petition for judicial review with the District Court. The District Court issued a memorandum and order upholding STAB's ruling; U.S. West now appeals this order.

¶2      We restate the issues as follows:

¶3      1.  Did the District Court err in finding that, pursuant to § 15-31-510(2), MCA (1997), U.S. West was liable for the additional interest assessed by the Department of Revenue for the tax year 1999?

¶4      2. Did the District Court err in finding that, pursuant to § 15-31-531(2), MCA (1997), U.S. West was not entitled to interest on the refund it received on June 7, 2001?

## BACKGROUND

¶5      U.S. West made $1,361,802 in quarterly tax payments for the 1999 tax year. Instead of filing its tax return on May 15, 2000, the company took advantage of an automatic statutory filing extension. On October 13, 2000, U.S. West filed its 1999 tax return, and claimed a total tax liability of $538,190. The quarterly payments made by U.S. West during 1999 exceeded this amount by $824,112. The company simultaneously filed a request for a refund of this overpayment.

¶6      On December 27, 2000, the Department of Revenue ("DOR") asked U.S. West for more information concerning the refund request. U.S. West did not respond to this request until March 21, 2001—eighty-four days later. DOR contacted U.S. West with a second information request on April 12, 2001. U.S. West did not respond to this second

request until May 10, 2001. Finally, the DOR issued a refund of $824,112 to U.S. West on June 7, 2001.

¶7 On December 16, 2002, U.S. West filed an amended 1999 tax return. On the amended return, U.S. West reported additional income which resulted in an additional tax liability of $368,654. U.S. West enclosed a payment of $435,012 with the amended return. The payment covered the additional $368,654 of tax liability, as well as $66,358 in interest. U.S. West figured that it owed interest on the additional tax for the period beginning June 7, 2001 (the date DOR issued the refund check for the May 15, 2000, overpayment), and ending on December 16, 2002 (the amended filing date).

¶8 The DOR disagreed with U.S. West's interest calculation, and issued an assessment claiming that U.S. West owed an additional $51,610 in interest. The DOR arrived at this figure by using May 15, 2000 (the original return due date), as the date from which the interest started to accrue.

¶9 U.S. West asked the DOR to review its decision to assess additional interest; after performing a review, the DOR issued a final determination affirming the assessment. U.S. West then appealed the DOR's final determination to STAB. After a hearing on the matter, STAB upheld the DOR's decision. U.S. West then filed a petition for judicial review of STAB's order with the Montana First Judicial District Court. The District Court issued an order affirming STAB's decision, from which U.S. West now appeals.

**STANDARD OF REVIEW**

¶10 We review a District Court's order affirming or reversing an administrative decision of STAB to determine whether the agency's findings are clearly erroneous, and

3

whether the agency correctly interpreted the law. *State Dept. of Revenue v. PPL Montana, LLC*, 2007 MT 310, ¶ 19, 340 Mont. 124, ¶ 19, 172 P.3d 1241, ¶ 19. We review a District Court's conclusions of law for correctness. *PPL Montana*, ¶ 19.

## DISCUSSION

¶11 **1. Did the District Court err in finding that, pursuant to § 15-31-510(2), MCA (1997), U.S. West was liable for the additional interest assessed by the Department of Revenue for the tax year 1999?**

¶12 The first issue, stated simply, requires us to determine how much interest U.S. West should have paid on the additional income reported on its amended return. At the heart of the issue lies a question of statutory interpretation. The parties offer competing interpretations of § 15-31-510(2), MCA, which provides: "If any tax due under this chapter is not paid when due as provided in 15-31-545, by reason of extension or otherwise, interest is added to the tax due at the rate of 12% a year from the due date until paid." Section 15-31-510(2), MCA (1997).

¶13 The DOR claims that § 15-31-510(2), MCA (1997), requires U.S. West to pay interest on the additional income from the date it was originally due—in this case, May 15, 2000. The DOR argues that U.S. West's additional tax liability of $368,654 (based on the additional income reported on the amended return) was "not paid when due." Section 15-31-510(2), MCA (1997). Thus, under § 15-31-510(2), MCA, interest must be "added to the tax due at the rate of 12% a year *from the due date* until paid." Section 15-31-510(2), MCA (1997) (emphasis added). The DOR maintains that the due date was

4

May 15, 2000, and so interest on the additional tax liability must be assessed from May 15, 2000, until December 16, 2002.

¶14     U.S. West argues that under the facts of this case, no tax was "due" under the statute until June 7, 2001. Including the additional income reported on the amended return, U.S. West's total tax liability for the 1999 year was $906,844. As of May 15, 2000, U.S. West had paid $1,361,802 in taxes (through quarterly installment payments, as required by statute) for 1999. Thus, U.S. West disputes the DOR's argument that its total tax liability was "not paid when due." In other words, U.S. West did not owe any debt to the DOR, even in light of the additional tax liability later discovered, because it had overpaid its taxes by such a significant amount. The company further argues that interest, by definition, can only accrue where a debt was owed.

¶15     However, U.S. West concedes that once the DOR issued the refund for the purported overpayment of $824,112, a deficit was created (though the deficit was not discovered until the amended return was filed). After the refund, U.S. West's total taxes paid for 1999 amounted to $538,190. Thus, as of June 7, 2001 (the date the refund was issued), U.S. West had an outstanding balance of $368,654. Thus, U.S. West argues, the date its outstanding tax payment became "due" for purposes of § 15-31-510(2), MCA (1997), is June 7, 2001. Consequently, U.S. West calculated and paid interest on the outstanding taxes from June 7, 2001, through December 16, 2002.

¶16     Each party's proffered interpretation of § 15-31-510(2), MCA (1997), is plausible. The time-honored principles of statutory construction lead us to consider several questions as we weigh these two competing interpretations:

5

(1) Is the interpretation consistent with the statute as a whole? (2) Does the interpretation reflect the intent of the legislature considering the plain language of the statute? (3) Is the interpretation reasonable so as to avoid absurd results? and (4) Has an agency charged with the administration of the statute placed a construction on the statute?

*Montana Power Co. v. Cremer*, 182 Mont. 277, 280, 596 P.2d 483, 485 (1979).

¶17    Under ordinary circumstances, where a corporation has underpaid its taxes, the "due date" for § 15-31-510(2), MCA (1997), purposes will be the date the original return was due. In this sense, we agree with the DOR's reading of the "plain meaning" of the statute. However, as applied to the facts of the instant case, this reading results in an inequitable result: it would require a corporation which has overpaid its taxes to pay an interest penalty for underpayment.

¶18    Both parties concede that U.S. West's tax liability for 1999 totaled $906,844, and that the entirety of the sum was due on May 15, 2000. It is undisputed that as of May 15, 2000, U.S. West had paid $1,361,802 in taxes for 1999. As of June 7, 2001, after the refund was issued, U.S. West had paid $538,190 in taxes for 1999, resulting in a deficit of $368,654. As soon as U.S. West discovered this deficit, it submitted an amended return, along with payment of the outstanding $368,654. U.S. West also paid interest on the outstanding sum from June 7, 2001, to December 16, 2002, when the amended return was submitted and the outstanding taxes were paid.

¶19    We have long recognized the "rule of statutory construction [which provides] that a literal application of a statute which would lead to absurd results should be avoided whenever any reasonable explanation can be given consistent with the legislative purpose of the statute." *State v. Trimmer*, 214 Mont. 427, 432-33, 694 P.2d 490, 493 (1985)

6

(citations omitted). In the instant case, the DOR's literal application of the statute leads to an absurd result, and thus, should be avoided. Ordinarily, we give deference to the statutory interpretation advanced by the agency charged with administering the statute. *See e.g. State ex rel. Holt v. District Court*, 2000 MT 142, ¶ 10, 300 Mont. 35, ¶ 10, 3 P.3d 608, ¶ 10. However, here the DOR's interpretation does not comport with the above-stated principles of statutory construction, and so we decline to adopt it.

¶20 We conclude that U.S. West's reading of the statute is more consistent with the statutory scheme as a whole, and better reflects the intent of the legislature. The clear legislative intent behind § 15-31-510(2), MCA (1997), is to require delinquent corporate taxpayers to pay the DOR an interest penalty on outstanding taxes. At no point between May 15, 2000, and June 7, 2001, did U.S. West "owe" any taxes to the DOR. We decline to interpret the statute to require U.S. West to pay interest on a debt that it did not owe. Under the unique facts and circumstances of this case, U.S. West did not have an outstanding tax payment until June 7, 2001. Thus, interest on the outstanding taxes should be calculated from June 7, 2001, forward.

¶21 **2. Did the District Court err in finding that, pursuant to § 15-31-531(2), MCA (1997), U.S. West was not entitled to interest on the refund it received on June 7, 2001?**

¶22 As of May 15, 2000, the date U.S. West's original return was due, the company had paid $1,361,802 in taxes for 1999. As discussed above, the company's total tax liability for 1999 was $906,844. Thus, U.S. West had overpaid its taxes by $454,958. U.S. West argues that it is entitled to interest on that overpayment pursuant to § 15-31-

7

531(2), MCA (1997). In response, the DOR claims that U.S. West is not eligible to receive this statutory interest.

¶23    Section 15-31-531(2), MCA, provides in relevant part:

> [I]nterest shall be allowed on overpayments at the same rate as is charged on delinquent taxes due from the due date of the return or from the date of overpayment (whichever date is later) to the date the department approves refunding or crediting of the overpayment. Interest shall not accrue during any period the processing of a claim for refund is delayed more than 30 days by reason of failure of the taxpayer to furnish information requested by the department for the purpose of verifying the amount of the overpayment. No interest shall be allowed: (a) if the overpayment is refunded within 6 months from the date the return is due or from the date the return is filed, whichever is later[.]

Section 15-31-531(2), MCA (1997). STAB concluded that U.S. West was not entitled to interest on the overpayment, and the District Court affirmed.

¶24    The DOR argues that U.S. West is not entitled to interest because the refund was issued within the six-month "safe harbor" established by § 15-31-531(2)(a), MCA (1997). The statute states that "[n]o interest shall be allowed . . . if the overpayment is refunded within 6 months from the date the return is due or from the date the return is filed, whichever is later[.]" Section 15-31-531(2)(a), MCA (1997). U.S. West filed the return on October 13, 2000. If the DOR issued the refund to U.S. West by April 13, 2001, then U.S. West would not have been entitled to any interest on the overpayment. However, the DOR did not issue the refund until June 7, 2001. The DOR argues that since U.S. West delayed the processing of the return by eighty-four days, we should interpret the statute to allow the DOR a safe harbor of six months and eighty-four days.

¶25   In response, U.S. West argues that the plain language of the statute clearly provides that the six-month safe harbor is calculated "from the date the return is due or from the date the return is filed, whichever is later." Section 15-31-531(2)(a), MCA (1997). U.S. West claims that nothing on the face of the statute sanctions an extension of this safe harbor.

¶26   Again, both parties have advanced convincing, but contrasting, interpretations of the statute's plain language. Consequently, we rely on the principles of statutory interpretation discussed above in Part I to guide our analysis.

¶27   We conclude that the DOR's interpretation is more consistent with the statute as a whole, and more accurately reflects the intent of the legislature. By establishing the six-month harbor, the Legislature implicitly gave the DOR six months to process a refund claim. Under the DOR's interpretation, it will have a full six months to process the claim, regardless of taxpayer delay. By contrast, under U.S. West's reading of the statute, in extreme cases, a taxpayer's delay could force the DOR to process these claims in less than a week. Take for example a taxpayer that files a claim for interest on its overpayment. The DOR immediately requests more information from this taxpayer, but the taxpayer does not respond to the DOR's request for five months and three weeks. At this point, the DOR would have exactly one week in which to process the refund; otherwise the taxpayer would be entitled to interest on the overpayment.

¶28   This time it is U.S. West's interpretation of the statute which leads to an absurd result. True, interest will not accumulate during the five-month and three-week period in which the hypothetical taxpayer failed to respond. However, under U.S. West's reading

of the statute, this taxpayer would be entitled to collect interest each week from the time of its response until the time the DOR processed its refund. In other words, though the DOR actually took less than six months to process the refund (after subtracting the delay caused by the taxpayer), it must still pay interest on the overpayment to the taxpayer.

¶29 In sum, the DOR's interpretation of § 15-31-531(2)(a), MCA (1997), comports with the above-stated principles of statutory construction, and as such, is entitled to deference because the DOR is charged with the administration of the tax code. *See e.g. State ex rel. Holt*, ¶ 10. We conclude that when a taxpayer fails to respond to the DOR's request for more information within thirty days, this delay has two consequences under § 15-31-531(2)(a), MCA (1997): first, interest will not accrue during the delay, and second, the running of the six-month safe harbor is tolled during the delay.

¶30 In the instant case, U.S. West filed its return on October 13, 2000. As discussed above, U.S. West took eighty-four days to respond to the DOR's request for more information. Had U.S. West not delayed the processing of the claim, the safe harbor period would have expired on April 13, 2001. However, the six-month safe harbor period was tolled during the eighty-four days U.S. West caused the processing of the claim to be delayed. Thus, when the DOR issued the refund on June 7, 2001, the six-month safe harbor period had not yet expired. As such, U.S. West is not entitled to any interest on its overpayment.

## CONCLUSION

¶31 For the reasons stated above, we conclude that the District Court erred in upholding STAB's ruling which ordered U.S. West to pay interest on the outstanding taxes from May 15, 2000, to December 16, 2002. We hold that, under the unique circumstances of this case, § 15-31-510(2), MCA, only permits interest to be assessed against U.S. West from June 7, 2001, to December 16, 2002. Finally, we conclude that the District Court did not err in interpreting § 15-31-531(2), MCA (1997). During the eighty-four-day period in which U.S. West delayed responding to the DOR's request for information, the six-month safe harbor was tolled. Thus, when the DOR issued the refund on June 7, 2001, it was still within the six-month statutory safe harbor. Accordingly, we reverse in part, and affirm in part.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice Jim Rice dissenting.

¶32 I admire the simplicity of the Court's conclusion in ¶ 17 that it would be "inequitable" to assess a taxpayer with interest for a period of time in which the taxpayer

11

had actually overpaid its taxes. However, as the Court necessarily acknowledges, in ¶ 19, the plain meaning of the statute does not support this conclusion, and I cannot decline to enforce the statute on "equity" grounds. Further, at the end of the analysis, I do not believe the interest assessment here is inequitable.

¶33 Neither can it be said that the plain meaning of the statute leads to an absurd result, when the whole tax collection picture is reviewed. Although the Court also adopts an "absurdity" analysis, it should be noted that U.S. West does not argue that the statute is absurd. Importantly, U.S. West presents a very narrow legal question for our consideration. It explains that "[t]his appeal is entirely a question of statutory construction" and offers that "the legal issue is the application of that statute to a specific set of facts." We should answer the question presented and, after "applying the statutes to a specific set of facts," should properly end our work. Instead, the Court conjures up new factual scenarios in order to chase perceived absurdities.

¶34 While it may be natural to view a taxpayer's liability as a singular issue or amount, underpayments and overpayments are actually treated separately under the 1997 statutes. Underpayments, including the assessment of interest thereon, are governed by § 15-31-510, MCA (1997), and overpayments, including interest to be paid on tardily processed refunds, are governed by § 15-31-531, MCA (1997). The processes and schedules for the treatment of these are completely different, and the statutes make no effort to coordinate with each other. And for good reason, as this case shows.

¶35 Had U.S. West promptly filed its original return in May 2000, it would have been entitled, pursuant to that return and DOR's review, to a refund within six months without

interest, or with interest thereafter. However, it did not file its original return until October 2000, and after further delays by U.S. West in responding to DOR requests, the refund was ultimately paid by DOR in June 2001. Then, U.S. West filed an amended return in December 2002, reflecting additional 1999 income and additional tax liability. The Court, combining these events together, concludes that "[a]t no point between May 15, 2000, and June 7, 2001, did U.S. West 'owe' any taxes . . . ."

¶36 Turns out it actually did. By later amended return, the company declared additional 1999 income it had originally failed to declare and for which it owed additional taxes during this period. The Court excuses the payment of interest on this amount between May 15, 2000, and June 7, 2001, but fails to consider that this time period was manufactured, in large part, by U.S. West's late filing and its failure to respond promptly to DOR's inquiries. Considering the separate issues separately—overpayment and underpayment—U.S. West is entitled to interest on its overpayment in accordance with the schedule set forth in § 15-31-531, MCA (1997). It gets no more. Then, considering the underpayment caused by the failure to declare all of its income, it must pay interest thereon in accordance with § 15-31-510, MCA (1997). This Court should not don teller visors and attempt an "equitable" offset of these separate obligations.

¶37 The Court does not explain what is "absurd" about the operation of these statutes. There should be nothing inherently absurd about the Legislature's use of two separate statutes to make two different calculations and not require an offset against the other. If

13

this accounting scheme has led to an "absurd result," then we should fear for the validity of much of the tax code. I would affirm the District Court.

¶38 The Court continues its journey outside of the codebook under Issue 2. Envisioning even more inequity which could result in the case of a "hypothetical taxpayer" who delays responding to the DOR for five months and three weeks, the Court decides to legislate its own solution to this "dreadful" potential.[1] However, the plain language of the statute clearly provides that the six-month "safe harbor" is calculated "from the date the return is due or from the date the return is filed, whichever is later[.]" Section 15-31-531(2)(a), MCA (1997). Nothing in the statute permits this six-month period to be extended by reason of a taxpayer's delay in responding to an information request from DOR—indeed, this is the incentive built into the statute in favor of taxpayers to receive a timely refund, which the Court ignores entirely. If one wants to employ hypotheticals, consider that the Court has now eliminated the payment of interest for the taxpayer who submits his return timely, then waits five months and three weeks for his refund, only to receive a last minute request from DOR for "additional information" before the safe harbor expires. Having gained the extension of the safe harbor which the Court legislates today, DOR can issue the refund to the taxpayer within the additional time and pay no interest. The Court thus changes the statute from one

---

[1]This "hypothetical taxpayer" has nothing to do with the facts of the taxpayer in this case. Further, I question the validity of the premise that taxpayers would delay the processing of their refunds for five months in the hope that some interest might be added to the refund they have delayed obtaining.

which provides an incentive in favor of the taxpayer to one which provides an incentive in favor of the government.  Reversal is appropriate.

¶39     I would apply all of the statutes as written.


                                        /S/ JIM RICE



Chief Justice Karla M. Gray joins the dissent of Justice Rice.


                                        /S/ KARLA M. GRAY