FILED

04/01/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 24-0182

OP 24-0182

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 67

---

MONTANANS SECURING REPRODUCTIVE RIGHTS
and SAMUEL DICKMAN, M.D.,

     Petitioners,

  v.

AUSTIN MILES KNUDSEN in his official capacity
as MONTANA ATTORNEY GENERAL and
CHRISTI JACOBSEN, in her official capacity
as MONTANA SECRETARY OF STATE,

     Respondents.

---

ORIGINAL PROCEEDING:     Constitutional Initiative 14

COUNSEL OF RECORD:

     For Petitioners:

          Raph Graybill, Raph Grabill Law Firm, P.C., Great Falls, Montana

     For Respondents:

          Austin Knudsen, Montana Attorney General, Michael Noonan, Assistant
          Attorney General, Helena, Montana

          Emily Jones, Special Assistant Attorney General, Jones Law Firm, PLLC,
          Billings, Montana

     For Amici American Center for Law & Justice, Susan B. Anthony Pro-Life
     America, and Montana Family Foundation:

          Derek J. Oestreicher, Montana Family Foundation, Laurel, Montana

---

          Decided:  April 1, 2024

Filed:

                     _____
                           Clerk

Justice Ingrid Gustafson delivered the Opinion and Order of the Court.

¶1 Petitioners Montanans Securing Reproductive Rights and Samuel Dickman, M.D. (MSRR), seek declaratory judgment on original jurisdiction under M. R. App. P. 14(4). MSRR argues it is entitled to declaratory judgment that: (1) the Attorney General's proposed ballot statement for Constitutional Initiative 14 (CI-14) is argumentative, prejudicial, and inaccurate under § 13-27-212(1), MCA; and (2) MSRR's proposed ballot statement is clear and impartial and the Attorney General should have approved it under § 13-27-226(3)(c), MCA. MSRR further asks the Court to directly certify its ballot statement to the Montana Secretary of State immediately upon this Court's decision on this matter.

¶2 At our invitation, the Attorney General has responded to the petition. In response to MSRR's petition, the Attorney General addresses the issues raised by MSRR and further argues that as a threshold issue, there is no statutory mechanism to allow MSRR to challenge his ballot statement at this stage. The American Center for Law & Justice, Susan B. Anthony Pro-Life America, and Montana Family Foundation also filed a response in support of the Attorney General with leave of Court under M. R. App. P. 12(7).

¶3 We consider the following issues:

1. *May MSRR challenge the Attorney General's ballot statement under the relevant statutes?*

2. *Did the Attorney General violate § 13-27-212(1), MCA, by submitting a ballot statement for CI-14 that is argumentative, prejudicial, and/or inaccurate?*

3. *Did the Attorney General violate § 13-27-226(3)(c), MCA, by declining to approve MSRR's proposed ballot statement for CI-14?*

2

¶4  On March 18, 2024, we accepted and granted a declaratory judgment action from MSRR that held the Attorney General erred in concluding MSRR's proposed ballot initiative CI-14 was legally deficient. *Montanans Securing Reproductive Rights v. Knudsen*, 2024 MT 54, __ Mont. __, __ P.3d __ (MSRR I). CI-14 would amend Article II of the Montana Constitution by adding a new Section 36 as follows:

> Section 36.  Right to make decisions about pregnancy.  (1)  There is a right to make and carry out decisions about one's own pregnancy, including the right to abortion.  This right shall not be denied or burdened unless justified by a compelling government interest achieved by the least restrictive means.
>
> (2) The government may regulate the provision of abortion care after fetal viability provided that in no circumstance shall the government deny or burden access to an abortion that, in the good faith judgment of a treating health care professional, is medically indicated to protect the life or health of the pregnant patient.
>
> (3) The government shall not penalize, prosecute, or otherwise take adverse action against a person based on the person's actual, potential, perceived, or alleged pregnancy outcomes.  The government shall not penalize, prosecute, or otherwise take adverse action against a person for aiding or assisting another person in exercising their right to make and carry out decisions about their pregnancy with their voluntary consent.
>
> (4) For purposes of this section:
>
> > (a) A government interest is "compelling" only if it clearly and convincingly addresses a medically acknowledged, bona fide health risk to a pregnant patient and does not infringe on the patient's autonomous decision making.
> >
> > (b) "Fetal viability" means the point in pregnancy when, in the good faith judgment of a treating health care professional and based on the particular facts of the case, there is a significant likelihood of the fetus's sustained survival outside the uterus without the application of extraordinary medical measures.

3

¶5    MSRR also submitted its proposed ballot statement, which provides:

CI-___ affirms the right to make and carry out decisions about one's own pregnancy, including the right to abortion, in the Montana Constitution. This constitutional amendment prohibits the government from denying or burdening the right to abortion before fetal viability. Additionally, the amendment ensures that the government cannot deny or burden access to an abortion when it is necessary to protect the pregnant patient's life or health. CI-___ prevents the government from punishing patients, healthcare providers, or anyone who assists someone in seeking reproductive care, including abortion care.

¶6    Although MSRR had asked us to further declare its proposed ballot statement meets the applicable statutory requirements and direct the Attorney General to forward MSRR's statement to the Secretary of State, we held it was not entitled to this relief. *MSRR I*, ¶¶ 34, 37. Instead, we ordered the Attorney General to comply with § 13-27-605(3)(c)(iv), MCA, by preparing a ballot statement that complies with §§ 13-27-212 and -213, MCA,[1] and forward that statement to the Montana Secretary of State within five days of this Court's Opinion and Order. *MSRR I*, ¶¶ 37, 39.

¶7    On March 25, 2024, the Attorney General forwarded a ballot statement to the Secretary of State. In the accompanying memorandum, he gave three reasons why he had rejected MSRR's proposed ballot statement: (1) MSRR's proposed statement fails to advise voters as to how CI-14 would change Article II, Section 10, of the Montana Constitution and "statutory law"; (2) MSRR's proposed statement fails to alert voters that

---

[1] Section 13-27-213, MCA, pertains to the inclusion and structure of the "yes and no" statement on the ballot. There is no dispute that MSRR's yes and no statement complies with the statute and we thus omit further inclusion or discussion of § 13-27-213, MCA, within this Opinion and Order.

4

CI-14 "leaves key terms undefined and leaves many terms to the subjective judgment of individual abortion providers"; and (3) MSRR's proposed statement fails to inform voters that CI-14 would preclude the State from enforcing medical malpractice standards or using pregnancy outcomes to enforce other state policies. He instead provided the following statement to the Secretary of State:

> CI-*** amends the Montana Constitution to allow post-viability abortions up to birth and prohibits any State requirement for parental notice for a minor's girl's [sic] abortion. CI-*** leaves "fetal viability" and "extraordinary medical measures" to the subjective judgment of an abortion provider rather than objective legal or medical standards. CI-*** prohibits the State, or the people by referendum, from enacting health and safety regulations related to pregnancy care, except upon a narrow set of compelling interests. CI-*** eliminates the State's compelling interest in preserving prenatal life. The State or the people may not enforce post-viability abortion regulations if an abortion provider subjectively deems the procedure necessary. CI-*** prohibits the State and the people from enforcing medical malpractice standards against providers for harms caused in providing pregnancy/abortion care. CI-*** may increase the number of taxpayer-funded abortions.

¶8 Under § 13-27-605(1), MCA, if the proponents of a statewide ballot issue believe the ballot statements approved by the Attorney General do not satisfy the requirements of § 13-27-212, MCA, they may file an original proceeding in this Court challenging the adequacy of the statement and requesting this Court to alter the statement. On March 26, 2024, MSRR filed the present petition challenging the Attorney General's ballot statement and requesting this Court certify MSRR's proposed ballot statement to the Secretary of State in accordance with § 13-27-605(3)(c)(ii), MCA.

¶9 MSRR requested expedited consideration of this petition, alleging "it will be virtually impossible to collect the requisite number of signatures if it begins [collection

5

efforts] after May 1, 2024[.]" It further asserts if this Court fails to issue an Order disposing of this petition by April 10, 2024, MSRR's effort to qualify CI-14 for the November ballot will be severely jeopardized because of the 14-day review process by a legislative interim committee under § 13-27-228, MCA. Although we disagree with MSRR that § 13-27-228, MCA, applies in this instance,[2] we agree expeditious disposition is warranted. Section 13-27-605(3)(c)(i), MCA ("Pursuant to Article IV, section 7(2), of the Montana constitution, an action brought pursuant to this section takes precedence over other cases and matters in the supreme court. The court shall . . . as soon as possible render a decision as to the adequacy of the ballot statements[.]").

¶10     *1. May MSRR challenge the Attorney General's ballot statements under the relevant statutes?*

¶11     As a threshold issue, the Attorney General asserts there is no statutory mechanism by which MSRR may challenge his ballot statement at this stage. Relying on § 13-27-605(1), MCA, the Attorney General maintains MSRR had 10 days from his determination that CI-14 was legally deficient in which to challenge the adequacy of his ballot statement.

---

[2] Section 13-27-228(1), MCA, provides, in part, that if the Attorney General finds that a proposed statewide initiative is legally sufficient, the Secretary of State shall provide the text to the Executive Director of the Legislative Services Division, who in turn shall forward that text to the appropriate interim committee for review. Sections 13-27-228(2) and -228(3), MCA, further explain the review process, requiring the interim committee to vote to either support or not support the placement of the proposed initiative on the ballot and report the outcome of the vote to the Secretary of State within 14 days. In this instance, the Attorney General did not find that CI-14 was legally sufficient; this Court overturned his deficiency determination on judicial review. *Montanans Securing Reproductive Rights v. Knudsen*, 2024 MT 54, __ Mont. __, __ P.3d __. The interim committee review process has thus not been triggered as the condition precedent—a finding of legal sufficiency by the Attorney General—was not met.

The Attorney General sees no impediment to this interpretation in the fact that his ballot statement did not exist at that time. Instead, he argues once he submitted the ballot statement to the Secretary of State in accordance with § 13-27-605(3)(c)(iv), MCA, MSRR's opportunity to challenge the statement was foreclosed.

¶12 Section 13-27-605(1), MCA, provides:

> If the proponents of a statewide ballot issue believe that the ballot statements approved by the attorney general do not satisfy the requirements of 13-27-212 or 13-27-213 or believe that the attorney general was incorrect in determining that the petition was legally deficient, they may, within 10 days of the attorney general's determination regarding legal sufficiency provided for in 13-27-226, file an original proceeding in the supreme court challenging the adequacy of the statement or the attorney general's determination and requesting the court to alter the statement or modify the attorney general's determination.

¶13 In this case, the Attorney General initially declined to review MSRR's proposed ballot statement because he found CI-14 legally deficient. *MSRR I*, ¶ 34. When MSRR timely challenged the Attorney General's legal deficiency determination, it pointed out that the Attorney General had undertaken "a curious change in practice," as he had "weighed in on the petitioners' ballot statements in *Monforton* [*v. Knudsen*, 2023 MT 179, 413 Mont. 367, 539 P.3d 1078,] and *Montanans for Election Reform* [*Action Fund v. Knudsen*, 2023 MT 226, 414 Mont. 135, ___ P.3d ___,] despite declaring the initiatives legally insufficient." MSRR accused the Attorney General of changing his practice as a way to create needless delay by forcing further litigation before this Court if the Attorney General failed to submit statutorily compliant ballot statements to the Secretary of State. *MSRR I*, No. OP 24-0052, Petitioners' Reply at 1-2.

7

¶14 MSRR asked this Court to declare its proposed ballot statement complies with § 13-27-212, MCA, and direct the Attorney General to forward MSRR's ballot statement to the Secretary of State. We declined MSRR's request, instead directing the Attorney General to comply with § 13-27-605(3)(c)(iv), MCA. *MSRR I*, ¶ 37. This statute requires the Attorney General, in relevant part, to prepare ballot statements that comply with § 13-27-212, MCA.

¶15 The Attorney General now argues that under § 13-27-605(1), MCA, there is no remedy available to the proponents of a ballot initiative if the Attorney General fails to prepare a compliant ballot statement so long as he waits more than 10 days after his determination of legal sufficiency to prepare the statement. We have long recognized the rule of statutory construction which provides that a literal application of a statute which would lead to absurd results should be avoided whenever any reasonable explanation can be given consistent with the legislative purpose of the statute. *U.S. West, Inc. v. Dep't of Revenue*, 2008 MT 125, ¶ 19, 343 Mont. 1, 183 P.3d 16 (citation and internal quotation omitted). In this case, the Attorney General's interpretation of § 13-27-605(1), MCA, leads to an absurd result—namely an abrogation of due process. Under § 13-27-605(3)(c)(iv), MCA, where, as occurred in *MSRR I*, this Court overrules an attorney general's legal deficiency determination, the attorney general "shall prepare ballot statements . . . ." The statute clearly contemplates that, when an attorney general finds a ballot initiative legally deficient and this Court overturns that determination, the attorney general shall prepare these ballot statements well after 10 days since the issuance of the legal deficiency

8

determination. The legislative purpose of the statute is to provide for court review of an attorney general's legal sufficiency or deficiency determination and the ballot statements. Interpreting this statute in such a way as to preclude judicial review would defeat the purpose of the statute. We therefore decline to interpret the statute to impose a 10-day time limit on challenging a ballot statement prepared in accordance with § 13-27-605(3)(c)(iv), MCA.

¶16    *2. Did the Attorney General violate § 13-27-212(1), MCA, by submitting a ballot statement for CI-14 that is argumentative, prejudicial, and/or inaccurate?*

¶17    MSRR contends this Court should reject the Attorney General's ballot statement because it is argumentative, inaccurate, and prejudicial. MSRR argues the Attorney General violated § 13-27-212(1), MCA, which provides, "A statement of purpose and implication expresses the true and impartial explanation of the proposal in plain, easily understood language. The statement of purpose and implication may not be argumentative or written so as to create prejudice for or against the issue." MSRR argues this Court's intervention is necessary because the Attorney General's statement wholly fails to describe CI-14 and would prevent a voter from casting an intelligent and informed ballot. *Montanans Against Tax Hikes v. State*, 2018 MT 201, ¶ 7, 392 Mont. 344, 423 P.3d 1078 (citations omitted).

¶18    MSRR claims the Attorney General's statement will confuse voters because it consists of "a series of hypothesized effects divorced from the actual proposal" and discusses issues that are not present in CI-14. MSRR offers argument as to why it believes

9

each sentence in the Attorney General's statement is argumentative, inaccurate, prejudicial, or misleading.

¶19 Having considered the ballot statement the Attorney General submitted to the Secretary of State, we agree with MSRR that it does not fulfill the requirements of § 13-27-212(1), MCA, because it does not fairly state to the voters what is proposed within the Initiative. *Montanans Against Tax Hikes*, ¶ 7 (citation and quotation omitted). We have recognized not every detail of an initiative can be explained within the statutory 135-word limit on ballot statements. *Montanans Against Tax Hikes*, ¶ 15 (citations omitted). We have also held we must intervene "when a ballot statement's language would prevent a voter from casting an intelligent and informed ballot." *Montanans Against Tax Hikes*, ¶ 7 (citations omitted). In this case, the Attorney General's ballot statement would prevent a voter from casting an intelligent and informed ballot as it does not inform the voter as to CI-14's provisions but instead focuses on topics, such as parental notice and medical malpractice, that CI-14 does not discuss. We therefore conclude the Attorney General's ballot statement does not meet the requirements of § 13-27-212, MCA.

¶20 *3. Did the Attorney General violate § 13-27-226(3)(c), MCA, by declining to approve MSRR's proposed ballot statement for CI-14?*

¶21 MSRR requests this Court to declare its proposed ballot statement compliant with statutory requirements and certify it to the Secretary of State pursuant to this Court's authority under § 13-27-605(3)(c)(ii), MCA. MSRR argues the Attorney General was *required* to approve MSRR's ballot statement under § 13-27-226(3)(c), MCA, because it meets the statutory requirements. According to MSRR:

10

Revisions to the ballot issue process in 2023 clarify that <u>proponents</u> first prepare the ballot statement, and limit the A.G.'s discretion to rewrite it. Under 2023 Senate Bill 93, codified at § 13-27-226(3)(c), MCA (2023), if the proponent's ballot statement satisfies the neutrality and clarity requirements of § 13-27-212(1), MCA, then "the attorney general **shall approve** the [proponent's] ballot statements and forward them to the secretary of state." (emphasis added). Only "if the attorney general determines in writing that a ballot statement <u>clearly does not comply</u> with the relevant requirements [for clarity and neutrality], [then] the attorney general shall prepare a ballot statement that complies with the relevant requirements." Section 13-27-226(3)(c) (emphasis added).

(Emphasis and brackets MSRR's.) We disagree with MSRR's interpretation of § 13-27-226(3)(c), MCA. Its excerpted quotation of the statute eliminates necessary context. Section 13-27-226(3)(c), MCA, provides:

> If the attorney general determines the ballot statements comply with the requirements provided in subsection (3)(a), the attorney general shall approve the ballot statements and forward them to the secretary of state. However, if the attorney general determines in writing that a ballot statement clearly does not comply with the relevant requirements of subsection (3)(a), the attorney general shall prepare a ballot statement that complies with the relevant requirements of subsection (3)(a). The attorney general shall forward the revised ballot statement to the secretary of state as the approved ballot statement and shall provide a copy to the petitioner.

Contrary to MSRR's interpretation, the statute gives the Attorney General the authority to determine whether a proponent's ballot statement meets the requirements of § 13-27-226(3)(a), MCA,[3] and, if he determines the proponent's statement does not meet those requirements, he shall then prepare a ballot statement that does meet those requirements.

---

[3] Section 13-27-226(3)(a), MCA, directs the Attorney General to review ballot statements to determine if they contain a statement of purpose and implication that complies with § 13-27-212, MCA, and a "yes and no" statement that complies with § 13-27-213, MCA.

11

¶22 We first consider the three justifications the Attorney General offered to the Secretary of State for rejecting MSRR's proposed ballot statement. See ¶ 7, above. We previously rejected the Attorney General's argument that CI-14 would change Article II, Section 10, of the Montana Constitution. *MSRR I*, ¶ 13. Second, Subsection 4 of CI-14 includes all of the definitions of the ballot initiative. The defined terms are "compelling" and "fetal viability." While the Attorney General's memorandum does not specify which "key terms" he believes remain undefined, we do not find MSRR's ballot statement was fatally deficient for failing to explicitly alert voters that any term not defined in CI-14 was not defined in CI-14. Finally, the Attorney General's determination MSRR's ballot statement was deficient because it did not inform voters that CI-14 would preclude the State from enforcing medical malpractice standards or using pregnancy outcomes to enforce other state policies is an insufficient basis to reject MSRR's proposed ballot statement because CI-14 neither precludes the State from enforcing medical malpractice standards nor from using pregnancy outcomes to enforce other state policies.

¶23 Although we have determined the Attorney General's ballot statement fails to comply with § 13-27-212, MCA, we disagree with MSRR that, "[t]here is simply no reading under which MSRR's statement 'clearly does not comply with the relevant requirements,' the necessary threshold for the A.G. to rewrite it under the plain text of the statute." MSRR's interpretation of § 13-27-226(3)(c), MCA, elides the Attorney General's authority and duty to determine if the ballot statement complies with § 13-27-226(3)(a), MCA.

¶24 Even though the Attorney General's ballot statement was deficient, we consider his arguments for why he believes MSRR's ballot statement was also deficient, in accordance with his statutory authority and duty to make such determination. We find his arguments well-taken in two respects.

¶25 First, the Attorney General argues MSRR's statement that CI-14 "affirms the right . . . [to] abortion" will mislead voters by creating the impression that CI-14 merely protects existing rights when it creates new rights or expands existing ones. Although we do not agree with the Attorney General's argument on this point in its entirety,[4] we agree CI-14 does more than affirm existing rights.

¶26 The Attorney General further argues MSRR's proposed ballot statement fails to alert voters that the determination of when an abortion "is necessary" to protect a pregnant person's life or health is left in the hands of treating health care providers rather than via a statutorily defined, objective standard. Although this Court will not invalidate a ballot statement simply because a better one could be written, *Montanans Against Tax Hikes*, ¶ 13 (citations omitted), we agree the ballot statement should make clear that CI-14 intends to leave medical determinations to medical providers, rather than to the government.

---

[4] The Attorney General asserts, "CI-14 creates a right to post-viability abortion never before recognized in Montana." This assertion is incorrect, as the right to post-viability abortion "where necessary, in appropriate medical judgment, for the preservation of the life or health of the mother" was recognized in Montana for at least 50 years. *See Roe v. Wade*, 410 U.S. 113, 163-65, 93 S. Ct. 705, 732 (1973).

13

¶27 Under § 13-27-605(3)(c)(ii), MCA, if this Court determines the ballot statements do not meet the requirements of § 13-27-212, MCA, it may either order the Attorney General to revise the ballot statements within five days or it may certify to the Secretary of State ballot statements this Court determines meet those requirements. Taking into account the ballot statements prepared by MSRR and the Attorney General, and their arguments thereto, we have prepared a ballot statement that complies with § 13-27-212, MCA, that is set forth below.

¶28 IT IS ORDERED the petition for original jurisdiction is ACCEPTED and GRANTED as an original proceeding in the form of a declaratory judgment action under M. R. App. P. 14(4).

¶29 IT IS FURTHER ORDERED the Attorney General's ballot statement for CI-14 is REJECTED as it fails to comply with § 13-27-212(1), MCA.

¶30 IT IS FURTHER ORDERED that the Court CERTIFIES the following ballot statement to the Secretary of State:

> CI-___ would amend the Montana Constitution to expressly provide a right to make and carry out decisions about one's own pregnancy, including the right to abortion. It would prohibit the government from denying or burdening the right to abortion before fetal viability. It would also prohibit the government from denying or burdening access to an abortion when a treating healthcare professional determines it is medically indicated to protect the pregnant patient's life or health. CI-___ prevents the government from penalizing patients, healthcare providers, or anyone who assists someone in exercising their right to make and carry out voluntary decisions about their pregnancy.

> The Clerk is directed to send a copy of this Opinion and Order to all counsel of record in this matter.

14

DATED this 1st day of April, 2024.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR