FILED

11/18/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 25-0729

OP 25-0729

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2025 MT 267

MONTANANS FOR NONPARTISAN COURTS,

      Petitioner,

  v.

AUSTIN KNUDSEN, in his official capacity as
MONTANA ATTORNEY GENERAL,

      Respondent.

ORIGINAL PROCEEDING:     Petition for Declaratory Judgment

COUNSEL OF RECORD:

      For Petitioner:

            Raph Graybill, Rachel Parker, Graybill Law Firm, PC, Great Falls, Montana

            Alex Rate, ACLU of Montana, Missoula, Montana

      For Respondent:

            Austin Knudsen, Montana Attorney General, Michael Russell, George Carlo L. Clark, Assistant Attorneys General, Helena, Montana

                                Decided:  November 18, 2025

Filed:

                               _____
                                      Clerk

Justice James Jeremiah Shea delivered the Opinion and Order of the Court.

¶1 Petitioner Montanans for Nonpartisan Courts (MNC) seeks declaratory judgment on original jurisdiction under M. R. App. P. 14(4) and, pursuant to § 13-27-605(1), MCA, asks this Court to alter the revised Statement of Purpose and Implication (Statement) offered by Austin Knudsen, in his official capacity as Montana Attorney General, for Constitutional Initiative 132 (CI-132). MNC alleges the Attorney General (1) violated § 13-27-212, MCA, because his revised Statement is argumentative, misleading, and prejudicial; and (2) MNC's proposed Statement is statutorily and constitutionally compliant. MNC further asks the Court to certify its proposed Statement to the Montana Secretary of State.

¶2 At our invitation, the Attorney General has responded in opposition to MNC's petition.

¶3 We consider the following issues:

1. *Does the Attorney General's revised Statement violate § 13-27-212, MCA?*

2. *Is MNC's proposed Statement statutorily and constitutionally compliant?*

¶4 CI-132 would amend Article VII of the Montana Constitution by adding a new Section 12 that states: "Section 12. Nonpartisan Judicial Elections. Judicial elections shall remain nonpartisan." The proposed initiative was submitted, with proposed ballot statements, to the Secretary of State on August 15, 2025. The Secretary then forwarded the proposed initiative and ballot statements to the Legislative Services Division, which completed its review on August 26, 2025. Relevant to the present dispute, the proposed

2

Statement MNC submitted states: "CI-[132] amends the Montana Constitution to require that judicial elections remain nonpartisan."

¶5 On October 9, 2025, the Attorney General completed his legal sufficiency review. Although he concluded CI-132 is legally sufficient, he determined MNC's proposed Statement failed to comply with § 13-27-212(1), MCA. In the memorandum regarding his legal sufficiency review, the Attorney General explained that he concluded MNC's proposed Statement did not comply with § 13-27-212(1), MCA, because it "does not contain a true reflection of the current text of the Montana Constitution," which is "silent on the nature of judicial elections . . . ." The Attorney General further stated that CI-132 would "change[] the Montana Constitution's status quo by requiring *all* judicial elections be nonpartisan." (Emphasis in original.) The Attorney General further found MNC's proposed Statement "fails to inform voters what is meant by 'nonpartisan.'"

¶6 Pursuant to § 13-27-226(3)(c), MCA, the Attorney General provided a revised Statement: "CI-[132], if passed, amends Article VII of the Montana Constitution to create a new Section 12 that mandates all judicial elections be nonpartisan. A nonpartisan election prohibits labeling candidates on the ballot according to the political party the candidate aligns with including labels like independent."

¶7 MNC challenges the Attorney General's revised Statement under § 13-27-605(1), MCA, which provides that, if the proponents of a statewide ballot issue believe the ballot statements approved by the Attorney General do not satisfy the requirements of § 13-27-212, MCA, they may file an original proceeding in this Court challenging the adequacy of the statement and asking this Court to alter the statement.

3

¶8    *1. Does the Attorney General's revised Statement violate § 13-27-212, MCA?*

¶9    MNC asserts CI-132 is a straightforward proposed amendment that would enshrine the status quo of nonpartisan judicial elections in the Montana Constitution. It contends this Court should reject the Attorney General's revised Statement because it is argumentative, misleading, prejudicial, and "deeply confusing." MNC argues the revised Statement would not accurately inform voters about the intended effect of CI-132 and the revised Statement would prevent a voter from casting an intelligent and informed ballot regarding CI-132. *Montanans Against Tax Hikes v. State*, 2018 MT 201, ¶ 7, 392 Mont. 344, 423 P.3d 1078 (citations omitted).

¶10   MNC objects to both sentences in the Attorney General's revised Statement. It alleges that the first sentence obscures the context that judicial elections are currently nonpartisan in Montana and that the word "mandates" is pejorative. MNC further argues the second sentence of the revised Statement attempts to define "nonpartisan," which needs no definition, and does so in a confusing and misleading way. MNC argues this sentence inaccurately implies all judicial candidates are partisans, CI-132 would conceal the partisan nature of judicial candidates from voters, and CI-132 would prevent voters from casting ballots for "independents."

¶11   The Attorney General asks this Court to accept the revised Statement. He asserts his revised Statement rectifies two problems with MNC's proposed Statement: (1) "it replaces misleading language about the constitutional status[]quo"; and (2) "it informs voters what is meant by 'nonpartisan.'" He argues the first sentence of his revised Statement is true: CI-132 would amend the Montana Constitution and create a new

constitutional mandate that all judicial elections be nonpartisan. He disagrees with MNC that the use of the word "mandate" is pejorative, but maintains it is merely a synonym for "require," and it is indisputable that CI-132 would require judicial elections to be nonpartisan.

¶12 As to the second sentence, the Attorney General asserts the "core legal term" of CI-132 is "nonpartisan," and the term thus requires a "working definition" because it is a term of art within Montana's statutes. The Attorney General points to § 13-14-112, MCA, which provides that in nonpartisan elections, "[d]eclarations [for nomination] may not indicate political affiliation," and § 13-12-203(2), MCA, which provides that in nonpartisan general elections, candidates' names must appear under the title of the office sought "with no description or designation appearing with the name . . . ."

¶13 The language on the ballot statements must identify the measure on the ballot so that a Montana voter, drawing on both official and unofficial sources of information and education, will be able to exercise his or her political judgment. *Montanans Against Tax Hikes*, ¶ 6 (citing *Harper v. Greeley*, 234 Mont. 259, 269, 763 P.2d 650, 657 (1988)). Our standard of review in these matters is not whether a better statement could have been approved, but rather whether the statement complies with § 13-27-212, MCA. *Montanans Against Tax Hikes*, ¶ 10 (citations omitted).[1] We will not invalidate a ballot statement simply because a better one could be written. *Montanans Against Tax Hikes*, ¶ 13. In *Montanans Against Tax Hikes*, ¶ 7, we explained:

---

[1] *Montanans Against Tax Hikes* cites to § 13-27-312, MCA, which was repealed and superseded by § 13-27-212, MCA.

This Court has upheld ballot statements approved by the Attorney General as long as they employ ordinary plain language, explaining the general purpose of the issues submitted in language that is true and impartial, and are not argumentative or likely to create prejudice either for or against the issue. As long as the Attorney General's wording fairly states to the voters what is proposed within the Initiative, discretion as to the choice of language is entirely his. However, a court must intervene when a ballot statement's language would prevent a voter from casting an intelligent and informed ballot.

(Citations omitted; cleaned up.)

¶14     Having considered the Attorney General's revised Statement, we agree with MNC that it does not fulfill the requirements of § 13-27-212(1), MCA. We agree the first sentence of the Attorney General's revised Statement is misleading because it implies the requirement that judicial elections in Montana be nonpartisan would change the status quo. Judicial offices are currently nonpartisan elections by statute. Title 13, chapter 14, part 2, MCA. In his response in opposition to MNC's petition, the Attorney General attempts to distinguish a "statutory status quo" from a "constitutional status quo" and then argues CI-132 "uproots" the purported "constitutional status quo." However, the status quo is "[t]he situation that currently exists." *Status quo, Black's Law Dictionary* (12th ed. 2024). The situation that currently exists is that judicial elections in Montana are nonpartisan. The idea that a separate status quo exists for the Montana Constitution and for Montana statutes implies, incorrectly, that our Constitution and statutes co-exist in contradiction to each other. A voter will be able to cast an informed and intelligent ballot with the understanding that the status quo is the current state of the law, regardless of whether that law originates in constitution or statute.

6

¶15 As to the Attorney General's proposed second sentence, we disagree with the Attorney General that the Statement requires a "working definition" of "nonpartisan" where the statutes pertaining to nonpartisan elections have never found it necessary to define the term and where Montana voters have ample experience with nonpartisan elections—the last ninety years of nonpartisan judicial elections being but one example. Moreover, although the Attorney General points to statutory language as source material for his definition, his proposed Statement does not contain the statutory language. And, as MNC argues, the language the Attorney General chose implies that all judicial candidates are aligned with a political party but CI-132 would "prohibit[] labeling candidates" with that information. This would mislead voters and prevent them from casting an intelligent and informed ballot.

¶16 For the foregoing reasons, we conclude the Attorney General's proposed Statement does not meet the requirements of § 13-27-212, MCA, because his wording does not fairly state to the voters what is proposed within CI-132.

¶17 *2. Is MNC's proposed Statement statutorily and constitutionally compliant?*

¶18 Since we have rejected the Attorney General's revised Statement, we next consider whether MNC's proposed Statement for CI-132 is statutorily and constitutionally compliant. Even though the Attorney General's ballot statement was deficient, we consider his arguments for why he believes MNC's ballot statement was also deficient, in accordance with his statutory authority and duty under § 13-27-226(3)(a), MCA, to make such determination. *Montanans Securing Reprod. Rights v. Knudsen*, 2024 MT 67, ¶ 24, 416 Mont. 138, 546 P.3d 184. In his memorandum regarding the legal sufficiency review,

7

the Attorney General offers two justifications for rejecting MNC's proposed Statement: (1) it does not contain a true reflection of the current text of the Montana Constitution; and (2) it fails to define "nonpartisan."

¶19 As explained above, we do not find that a definition of "nonpartisan" is necessary in the Statement. We thus focus on the Attorney General's contention that MNC's proposed Statement fails to comply with § 13-27-212(1), MCA, because it "does not contain a true reflection of the current text of the Montana Constitution." Section 13-27-212(1), MCA, requires: "A statement of purpose and implication expresses the true and impartial explanation of the proposal in plain, easily understood language. The statement of purpose and implication may not be argumentative or written so as to create prejudice for or against the issue."

¶20 The Attorney General takes issue with MNC's use of the word "remain." He explains:

> The Montana Constitution is currently silent on the nature of judicial elections – indeed it only requires district court judges and supreme court justices to be elected, saying nothing of other judicial offices. Mont. Const. art. VII, § 8(1). Ballot Measure No. 5 changes the Montana Constitution's status quo by requiring *all* judicial elections to be nonpartisan. This adds a new requirement to Article VII, § 8(1) and to any court the legislature creates that is an elected office. The term "remain" is inappropriate in this context[.]

¶21 In his response in opposition to MNC's petition, the Attorney General further articulates his reasoning. He argues:

> Using "remain" in the ballot statement, Petitioner hides the ball from Montana voters. The Montana Constitution does not require nonpartisan elections. . . . Nonpartisan Supreme Court and district court elections are the policy position of the political branches—a policy that the Legislature and Governor can change. They do not reflect the Constitution's text. Petitioner

8

is remiss to equate a legislative policy with a constitutional principle. Petitioner's use of "remain" does not reflect the text of the Montana Constitution.

¶22 The Attorney General's objection to the use of the word "remain" in MNC's proposed Statement fails for two reasons. First, CI-132 uses the word "remain" within the text of the proposed constitutional amendment. We would be hard-pressed to deny that a Statement that uses the exact same words as the initiative itself is not a "true and impartial explanation" of the initiative, as required by § 13-27-212(1), MCA. Moreover, § 13-27-212(1), MCA, requires that the ballot statement express "the true and impartial explanation *of the proposal*." The Attorney General's objection to the ballot statement is that it is not "a true reflection of the current text of the Montana Constitution." That is not the statute's requirement. The Attorney General's disapproval lies with the language of CI-132 itself; however, the Attorney General found CI-132 legally sufficient. It is inconsistent for him to take the position that the initiative is legally sufficient while asserting that the ballot statement is insufficient on the basis of its use of the exact same word. Second, the Attorney General's assertion that nonpartisan elections are "the policy position of the political branches" uses many words to obscure a straightforward proposition. The term of art for "the policy position of the political branches" is "law." "Law" is also a term of art that describes the provisions of constitutions. *See Written Law, Black's Law Dictionary* (12th ed. 2024) ("Statutory law, together with constitutions and treaties, as opposed to judge-made law."). Thus, the Attorney General's statement that "Petitioner is remiss to equate a legislative policy with a constitutional principle," might also be expressed as "Petitioner is remiss to equate law with law." The latter expression

9

illustrates the fundamental flaw that underlies the Attorney General's argument; MNC is not remiss to equate law with law.

¶23 In this instance, MNC's proposed Statement states that CI-132 *"amends the Montana Constitution* to require that judicial elections remain nonpartisan."  It does not mislead voters as to what the Montana Constitution currently requires, but provides the context that judicial elections are currently nonpartisan and this amendment, if passed, would maintain that status quo.  As we noted above, the current law is the status quo.  This holds true regardless of whether that law is found within our Constitution, our statutes, our common law, or our case law.  Although parties sometimes disagree as to what the status quo is, within our legal system, only one status quo exists.

¶24 Having rejected the Attorney General's arguments as to why MNC's proposed Statement is noncompliant, we examine MNC's proposed Statement to determine its adequacy.  Section 13-27-605(3)(c), MCA; *Montanans Securing Reprod. Rights*, ¶ 21 (Attorney General has authority to determine whether a proponent's ballot statement complies with § 13-27-226(3)(a), MCA.).  As noted above, CI-132 proposes to amend the Montana Constitution by adding the following language: "Judicial elections shall remain nonpartisan."  Section 13-27-212(1), MCA, requires that the Statement "express[] the true and impartial explanation of the proposal in plain, easily understood language [and] may not be argumentative or written so as to create prejudice for or against the issue."  We conclude that MNC's proposed Statement, "CI-[132] amends the Montana Constitution to require that judicial elections remain nonpartisan," fulfills this requirement.  Largely reiterating the words of the initiative itself, MNC's proposed Statement provides a true and

10

impartial explanation of CI-132 in plain, easily understood language that is neither argumentative nor written so as to create prejudice for or against the initiative.

¶25    Pursuant to this Court's authority under § 13-27-605(3)(c)(ii), MCA, we declare MNC's proposed ballot Statement compliant with statutory requirements and certify it to the Secretary of State

¶26    IT IS ORDERED the petition for original jurisdiction is ACCEPTED and GRANTED as an original proceeding in the form of a declaratory judgment action under M. R. App. P. 14(4).

¶27    IT IS FURTHER ORDERED that the Court CERTIFIES the following ballot statement to the Secretary of State: "CI-132 amends the Montana Constitution to require that judicial elections remain nonpartisan."

The Clerk is directed to send a copy of this Opinion and Order to all counsel of record in this matter.

DATED this 18th day of November, 2025.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER

Chief Justice Cory J. Swanson, concurring in part and dissenting in part.

¶28    I concur in part and dissent in part.

11

¶29 First, I agree with Justice Rice's Dissent. The Attorney General correctly determined MNC's proposed ballot statement is legally inadequate. The Montana Constitution does not currently mandate (or require, if that is somehow less pejorative) nonpartisan judicial elections. If it did, there would be no point in proposing a constitutional amendment. Therefore, it is inaccurate and likely confusing to the voters to say under the proposed constitutional amendment judicial elections will "remain" nonpartisan. Constitutional amendments concern the text of the Constitution, not statutes. This reasoning also supports the first sentence of the Attorney General's proposed ballot statement because it ensures the voters understand this is a proposed amendment to the Constitution. In terms of clarity, it is a significant improvement over MNC's language.

¶30 Second, I agree with the Court the second sentence of the Attorney General's proposed ballot statement is legally inadequate. We afford the Attorney General discretion to propose this language, but not to the degree that it creates voter confusion and utilizes a subjective, rather than objective, description. The ballot language merely needs to state words to the effect that the candidate will not be affiliated with an organized political party. The Attorney General's description implies the candidate will in fact be affiliated with an organized political party, but that affiliation will remain hidden from the voters. While I understand this is the working theory of those who advocate for partisan judicial elections—remove the screen which is obscuring the judicial candidate's loyalties—this theory has not been established as fact for the purposes of the official ballot statement informing voters of the proposed amendment's substance. The proponents and opponents

12

will both argue the merits of this point, but the ballot statement should be as clear as possible and divorced from the campaign.

¶31     I would therefore find both ballot statements inadequate, and I would remand the matter for the parties to try again.

/S/ CORY J. SWANSON

Justice Jim Rice, dissenting.

¶32     The issue before the Court is the Attorney General's revision to the Statement of Purpose and Implication for CI-132, which, of course, would amend the Constitution if enacted. We are not presented here with the validity of CI-132 itself, but, nonetheless, the Statement of Purpose and Implication importantly would become both "the petition title" for circulation of signature petitions, and also "the ballot title" if the measure is placed upon the ballot. Section 13-27-212(3), MCA.

¶33     I disagree with the Petitioners' arguments against the Attorney General's Statement. Petitioners contend that the Attorney General's Statement "does not actually describe what CI-132 does (it amends the Constitution)." But the first sentence of the Attorney General's Statement does so indicate: CI-132 "if passed, amends Article VII of the Montana Constitution to create a new Section 12 . . . ." The Attorney General's Statement thus correctly explains that CI-132 would amend the Constitution.

¶34     The Petitioners argue that the Attorney General's objection to the word "remain" is misguided because that word "is the most accurate way to explain to voters the practical implication of approving CI-132." However, any language seeking to explain the purpose

13

of the initiative should not also convey an incorrect assumption. This is a proposed amendment of the Constitution, and use of the word "remain" conveys the idea that the Constitution *currently* provides for nonpartisan elections, which is incorrect. As the Attorney General argues, "'[r]emain,' as Petitioner uses it in the ballot statement, conveys that it is already the Constitution's status quo for nonpartisan judicial elections." However, currently, the Constitution takes no position on that issue, leaving it to policymakers. *See* Mont. Const. art. VII, § 8 ("Supreme Court justices and district court judges shall be elected by the qualified electors as provided by law"); *see also* Mont. Const. art. VII, § 5 (Justices of the Peace's qualifications and elections "provided by law"). As a matter of legal correctness, I believe the Attorney General's concern is legitimate, and that the Statement should not implicate the current state of public policy without explaining that it is doing so, or otherwise imply that current public policy is the status quo of the Constitution. The legal reality is that CI-132 would eliminate the Constitution's current delegation of the judicial election issue to the public policy arena, and instead decide the issue constitutionally. Thus, I believe "remain" is inaccurate, and should not be included within the title of the signature petitions or the ballot title.

¶35 Petitioners cite to news articles to make the point that, contrary to the Attorney General's concern, CI-132 is simple and can be easily explained. However, interestingly, the news reports cited by Petitioners do not use the word "remain" when providing an explanation about what CI-132 would do: "CI-132 'would require all judicial elections be nonpartisan, from municipal court judges to the high court.' Seaborn Larson, *Ballot initiative groups accuse Montana AG of political maneuvering in review process*, Helena

14

Ind. Record (Oct. 15, 2025)"; "'Constitutional Initiative 132 would amend the state Constitution to ensure that all judicial elections are nonpartisan.' Tom Lutey, *Attorney general's edits to ballot initiatives anger petitioners*, Mont. Free Press (Oct. 13, 2025)." This would seem to further reflect a concern that "remain" is not an accurate explanation of the effect of CI-132 upon the existing Constitution.

¶36    While I would have preferred that the Attorney General did not include the second sentence, it is not, in my view, an inaccurate explanation of nonpartisan elections and does not violate the statute. We "do not sit as some type of literary editorial board," but rather "defer to the Attorney General's rendition provided the statements meet the statutory requirements." *Citizens Right to Recall v. State*, 2006 MT 192, ¶ 10, 333 Mont. 153, 142 P.3d 764 (citing *Schulte v. Long*, 2004 S.D. 102, 687 N.W.2d 495, 498). As the Court likewise notes, "[a]s long as the Attorney General's wording fairly states to the voters what is proposed within the Initiative, discretion as to the choice of language is entirely his." *Montanans Against Tax Hikes v. State*, 2018 MT 201, ¶ 7, 392 Mont. 344, 423 P.3d 1078 (internal quotation omitted). I believe the Attorney General's Statement satisfies that standard, and I would uphold it.

¶37    I dissent.


                                        /S/ JIM RICE


15