FILED

06/09/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 26-0301

OP 26-0301

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 126

TRANSPARENT ELECTION INITIATIVE
and JEFF MANGAN,

      Petitioners,

  v.

AUSTIN KNUDSEN, in his official capacity as
MONTANA ATTORNEY GENERAL; and
CHRISTI JACOBSEN, in her official capacity as
MONTANA SECRETARY OF STATE,

      Respondents.

ORIGINAL PROCEEDING:      Petition for Declaratory Judgment

COUNSEL OF RECORD:

      For Petitioners:

            Matthew T. Cochenour, Cochenour Law Office, PLLC, Helena, Montana

      For Respondents:

            Austin Knudsen, Montana Attorney General, Brent Mead, Deputy Solicitor General, Ashley Evaro, Solicitor's Fellow, Helena, Montana

            Decided:  June 9, 2026

Filed:

_____
                  Clerk

Justice James Jeremiah Shea delivered the Opinion and Order of the Court.

¶1 Petitioners Transparent Election Initiative and Jeff Mangan ("TEI"), seek declaratory judgment on original jurisdiction and, pursuant to § 13-27-605(1), MCA, ask this Court to declare that the Attorney General's ballot statement for CI-135 violates § 13-27-212, MCA, because it fails to provide a true and impartial explanation of the initiative and is argumentative and prejudicial. TEI further asks the Court to alter TEI's proposed ballot statement and certify the amended ballot statement to the Montana Secretary of State immediately upon this Court's decision on this matter. Pursuant to this Court's Order of May 6, 2026, the Attorney General has responded to the petition.

¶2 We consider the following issues:

*Issue 1. Did the Attorney General exceed his authority under § 13-27-212(1), MCA, in rewriting the ballot statement for CI-135?*

*Issue 2. Did the Attorney General violate § 13-27-212(1), MCA, by submitting a ballot statement that is inaccurate, argumentative, or prejudicial?*

*Issue 3. Shall this Court reject the Attorney General's revised ballot statement, alter TEI's proposed ballot statement, and certify that amended statement to the Secretary of State?*

¶3 On April 24, 2026, we accepted and granted a declaratory judgment action from TEI and held the Attorney General erred in concluding TEI's proposed ballot initiative CI-135, which was then numbered BI-9, was legally deficient. *Transparent Election Initiative v. Knudsen*, 2026 MT 87, 427 Mont. 481, 588 P.3d 129 ("TEI I"). CI-135 would amend Article XIII of the Montana Constitution by creating a new Section 8 as follows:

**Section 8. Powers of artificial person.** (1) The state extends to an artificial person only those powers defined as artificial-person powers, and no others,

2

as a condition of state-conferred legal status and charter privileges. Any action taken outside those powers with respect to political spending power is void and results in the withdrawal of all charter privileges, subject only to reinstatement pursuant to procedures the legislature may enact, which may require full disgorgement of amounts expended in such political spending activity, certification of future compliance, and any additional conditions as the legislature considers appropriate.

(2) As used in this section, the following definitions apply:

(a) "Artificial person" means an entity whose existence or limited liability shield is conferred by Montana law, including an entity organized or existing under the laws of another jurisdiction that is authorized to transact business, is otherwise transacting business, or holds property in Montana. An entity organized or existing under the laws of another jurisdiction that directly or indirectly undertakes, finances, or directs the exercise of political spending power in the state of Montana is conclusively considered to be transacting business in this state for the purposes of this section.

(b) "Artificial-person powers" means powers necessary or convenient to carry out lawful business or charitable purposes as provided by statute, excluding political spending power.

(c) "Charter privilege" means any legal benefit to an artificial person that exists only because the state of Montana confers it.

(d)(i) "Political spending power" means the legal capacity to expend money or anything of value to influence the outcome of a vote of the electorate.

(ii) The term does not include the distribution of bona fide news, commentary, or editorial content unless the publishing entity is owned or controlled by a political party, a political committee, or a candidate.

(iii) Political spending power may be exercised by political committees, as provided by law.

¶4     TEI also submitted its proposed ballot statement, which provides:

CI-___ would add a new section to Article XIII of the Montana Constitution to define the powers granted to artificial persons, including corporations, as not including the ability to spend money or anything of value to influence the outcome of a vote of the electorate. Actions taken outside those powers with respect to political spending power are void and result in the withdrawal of

3

state-conferred privileges, subject to a legislative process for reinstatement. The initiative provides that the distribution of bona fide news, commentary, or editorial content is not an exercise of political spending power unless the publishing entity is owned or controlled by a political party, a political committee, or a candidate. Political spending power may be exercised by political committees as provided by law.

¶5 On April 29, 2026, the Attorney General forwarded his revised ballot statement to the Secretary of State. In the accompanying memorandum, he gave three reasons why he rejected TEI's proposed ballot statement: (1) TEI's proposed statement misleads voters by naming "corporations," but no other types of entities, as examples of "artificial persons"; (2) TEI's proposed statement misleads voters by failing to convey that CI-135 denies all powers to artificial persons under the Montana Constitution; and (3) TEI's proposed statement fails to define "political spending power," and its definition would be more informative to voters. The Attorney General provided the following alternative statement to the Secretary of State:

CI-***, if passed, limits artificial person powers to only those powers granted by statute. Artificial persons would not have any other powers under the Montana Constitution. Artificial persons include non-profits, trusts, partnerships, corporations, trade associations, labor unions, or unincorporated associations and includes all such entities doing business in Montana. CI-*** prohibits allowing artificial persons from having the power to expend money or anything of value to influence the outcome of a vote of the electorate. A violation of CI-***'s prohibition on contributing anything of value results in revoking the artificial person's legal status, which may only be reinstated subject to terms and conditions imposed by the Legislature. CI-***'s prohibition does not apply to distribution of bona fide news, commentary, or editorial content or to political committees.

¶6 Under § 13-27-605(1), MCA, if the proponents of a statewide ballot issue believe the ballot statements approved by the Attorney General do not satisfy the requirements of § 13-27-212, MCA, they may file an original proceeding in this Court challenging the

4

adequacy of the statement and requesting this Court to alter the statement. On May 5, 2026, TEI filed the present petition challenging the Attorney General's ballot statement and requesting this Court amend TEI's proposed ballot statement as specified in its petition and certify the amended proposed ballot statement to the Secretary of State in accordance with § 13-27-605(3)(c)(ii), MCA.

¶7 In this case, TEI does not dispute that the Attorney General made written findings alleging that TEI's proposed ballot statement does not comply with § 13-27-212, MCA. TEI suggests that, rather than certifying the Attorney General's revised ballot statement, this Court should modify TEI's proposed statement to include entities other than corporations in explaining what "artificial persons" are. Although TEI maintains that its proposed statement, as written, is not misleading, we agree with the Attorney General that the proposed statement misleads voters as to the scope of entities CI-135 would affect. We conclude that the Attorney General had a statutory basis to reject TEI's proposed ballot statement and offer a revised statement. *Montanans for Fair & Impartial Judges v. Knudsen (MFIJ)*, 2025 MT 285, ¶¶ 23-28, 425 Mont. 246, 580 P.3d 740. The remaining question is whether the Attorney General's revised ballot statement satisfies § 13-27-212, MCA.

¶8 *Issue 1. Did the Attorney General exceed his authority under § 13-27-212(1), MCA, in rewriting the ballot statement for CI-135?*

¶9 TEI argues that the Attorney General exceeded his authority when he revised the ballot statement for CI-135 because the scope of his revisions to TEI's proposed statement went beyond curing the alleged deficiencies the Attorney General enumerated. TEI asserts,

5

"The Attorney General exceeded his statutory authority by engaging in a sweeping rewrite of TEI's ballot statement untethered to the supposed deficiencies he identified." However, TEI identifies no authority that limits the manner in which the Attorney General may rewrite a proposed ballot statement if he finds it deficient. In *Montanans Against Tax Hikes v. State*, 2018 MT 201, ¶ 7, 392 Mont. 344, 423 P.3d 1078, we explained:

> This Court has upheld ballot statements approved by the Attorney General as long as they employ "ordinary plain language, explaining the general purpose of the issues submitted in language that is true and impartial, and [are] not argumentative or likely to create prejudice either for or against the issue." *Stop Over Spending Montana v. McGrath*, 2006 MT 178, ¶ 28, 333 Mont. 42, 139 P.3d 788. As long as the Attorney General's wording "fairly states to the voters what is proposed within the Initiative, discretion as to the choice of language . . . is entirely his." *State ex rel. Wenzel v. Murray*, 178 Mont. 441, 448, 585 P.2d 633, 637-38 (1978).

In his response in opposition to TEI's petition, the Attorney General similarly notes that we do not require him to connect each instance of revision with a specific, identified deficiency. He points out that in *MFIJ*, ¶ 29, we concluded he had no statutory basis to revise a ballot statement where he did not articulate any way in which he believed the proponent's proposed ballot statement failed to comply with § 13-27-212(1), MCA. However, when the Attorney General articulates the identified deficiencies and exercises his statutory authority to revise a ballot statement, we do not require him to "tether" each revision to an identified deficiency. The Attorney General's discretion in revising the ballot statement remains bounded by § 13-27-212, MCA: the final ballot statement still must provide a true and impartial explanation in plain, easily understood language and may not be argumentative or written so as to create prejudice for or against the issue. Moreover, the Attorney General's revised ballot statement must cure the identified deficiencies. We

6

conclude the Attorney General did not exceed his authority under § 13-27-226(3)(c), MCA, when he revised the ballot statement. We therefore turn to whether the revised statement itself complies with § 13-27-212, MCA.

¶10 *Issue 2. Did the Attorney General violate § 13-27-212(1), MCA, by submitting a ballot statement that is inaccurate, argumentative, or prejudicial?*

¶11 TEI contends the Attorney General's revised ballot statement fails to provide a true and impartial explanation of CI-135 and is argumentative, misleading, and prejudicial. TEI argues the Attorney General's ballot statement does not meet the requirements of § 13-27-212(1), MCA, which provides, "A statement of purpose and implication expresses the true and impartial explanation of the proposal in plain, easily understood language. The statement of purpose and implication may not be argumentative or written so as to create prejudice for or against the issue."

¶12 TEI alleges the Attorney General's statement "risks misleading voters" because he frames CI-135's effect as being "a 'prohibition' on artificial persons' ability to 'expend money,'" whereas TEI maintains that CI-135 "specifies the scope of powers granted to artificial persons." TEI complains that the Attorney General repeatedly describes CI-135 as a "prohibition" when the language of CI-135 itself does not use the words "prohibit" or "prohibition." TEI maintains that CI-135 defines the powers granted to artificial persons and the Attorney General mischaracterizes CI-135 as a prohibition on powers. The Attorney General asserts in his response in opposition to the present petition that CI-135 "acts as a prohibition on political spending" and it is not misleading to the voters to advise them of such within the ballot statement. He points out that artificial persons may currently

7

engage in political spending, but they will no longer be able to do so if the electorate approves CI-135, and in fact the entire point of CI-135 is to prevent artificial persons who operate in Montana from engaging in political spending.

¶13 We will uphold an Attorney General's revised ballot statement if the statement "uses ordinary plain language, explains the general purpose of the issues submitted in language that is true and impartial, and [is] not argumentative or likely to create prejudice either for or against the issue . . . ." *Stop Over Spending Mont.*, ¶ 12 (citation omitted). Having reviewed the Attorney General's revised ballot statement, we do not agree with TEI that the revised statement misleads voters as to the effect of CI-135 by using the words "prohibits" and "prohibition." TEI does not dispute that CI-135, if enacted, would in fact prohibit artificial persons from expending money or anything of value to influence elections by removing political spending power from the powers artificial persons may exercise, and rendering void actions taken outside those powers with respect to political spending power. TEI previously asserted to this Court that the initiative "expresses the will of the people of Montana that the people do not extend to artificial persons . . . the power to spend money or anything of value to influence the outcome of a vote of the electorate." Petition for Declaratory Relief on Original Jurisdiction at 3, *Transparent Election Initiative v. Knudsen*, No. OP 26-0170. While TEI might prefer to state that the people decline to extend the power to spend to artificial persons, it is not inaccurate or misleading to say that artificial persons are prohibited from doing so. This disagreement is a dispute over whether the glass is half-full or half-empty; however you might want to

8

describe it, the contents of the glass are at 50% capacity and neither characterization is misleading.

¶14    TEI further takes issue with the Attorney General's decision to incorporate the definition of the term "political spending power" within the revised ballot statement.  In his Memorandum regarding the ballot statements, the Attorney General explained that he believed it "more informative to present voters with the definition 'expend money or anything of value to influence the outcome of a vote of the electorate' rather than 'political spending power.'"  TEI points out that we have previously held that "not every detail of an initiative can be explained" in a statement limited to 135 words.  *Montanans Against Tax Hikes*, ¶ 15.  TEI argues that its proposed ballot statement better incorporated the meaning of "political spending power" without explicitly defining the term and that the Attorney General's choice to include the definition and reiterate the meaning within the revised ballot statement "uses up a significant number of words in a statement that is limited to 135 words."  TEI complains that the Attorney General's drafting decision makes his revised ballot statement "less readable," but it does not point to any arguably crucial details the Attorney General omitted.  Furthermore, the standard of review in these matters is not whether a better statement could have been approved, but whether the statement complies with § 13-27-212, MCA.  *Montanans Against Tax Hikes*, ¶ 10.  TEI does not allege that the Attorney General's revised ballot statement exceeds the 135-word limit required by § 13-27-212(2), MCA, nor does TEI allege that the Attorney General's inclusion of the definition of "political spending power" within the revised statement is argumentative or written so as to create prejudice against CI-135, as required by

9

§ 13-27-212(1), MCA. We see no basis to disturb the Attorney General's drafting choice to define "political spending power," as the inclusion of the definition of "political spending power" does not render his revised ballot statement noncompliant with the statute.

¶15 TEI argues the statement, "A violation of CI-***'s prohibition on contributing anything of value results in revoking the artificial person's legal status," fails to satisfy § 13-27-212(1), MCA, for two reasons: (1) use of the word "contributing," instead of discussing "political spending power" is misleading because "contribution" is a campaign finance term of art; and (2) CI-135 does not "revoke" legal status but "withdraws" charter privileges as the consequence of an artificial person exercising political spending power. It argues this is another reason why we should reject the Attorney General's revised ballot statement.

¶16 The Attorney General disagrees with TEI's assertions, maintaining that this sentence fairly advises voters as to what is proposed within CI-135. The Attorney General asserts that "contributing" is used "in the ordinary sense, signal[ing] to voters that activities besides spending money can fall within the scope of political spending." Noting that "political spending power," as defined in CI-135, means "the legal capacity to expend money or anything of value to influence the outcome of a vote of the electorate," he argues that the word "spend" is less clear to voters because it implies only monetary support would be prohibited. The word "contributing," used in its ordinary sense, implies that things other than monetary support could be implicated under CI-135.

¶17 The Attorney General also asserts that the term "revoking" explains the consequences an artificial person faces if it acts outside its statutorily granted powers. The

10

Attorney General further maintains that, under CI-135's definitions, legal status is a charter privilege: "'Charter privilege' means any legal benefit to an artificial person that exists only because the state of Montana confers it."

¶18 In *Montanans for Nonpartisan Courts v. Knudsen*, 2025 MT 267, ¶ 13, 425 Mont. 40, 579 P.3d 541 (citing *Montanans Against Tax Hikes*, ¶ 7), we explained:

> This Court has upheld ballot statements approved by the Attorney General as long as they employ ordinary plain language, explaining the general purpose of the issues submitted in language that is true and impartial, and are not argumentative or likely to create prejudice either for or against the issue. As long as the Attorney General's wording fairly states to the voters what is proposed within the Initiative, discretion as to the choice of language is entirely his.

In this instance, the Attorney General used ordinary language to convey the consequences an artificial person may face if it acts outside its statutorily granted powers if CI-135 is enacted. His explanation to the voters that violating CI-135's "prohibition on contributing anything of value results in revoking the artificial person's legal status" is not misleading because, effectively, that is part of what CI-135 does: "Any action taken outside those powers with respect to political spending power is void and results in the withdrawal of all charter privileges, subject only to reinstatement pursuant to procedures the legislature may enact, which may require full disgorgement of amounts expended in such political spending activity, certification of future compliance, and any additional conditions as the legislature considers appropriate."

¶19 In scrutinizing the Attorney General's revised ballot statement, we conclude one statement within it does not comply with § 13-27-212(1), MCA, because it does not fairly state to the voters what is proposed within the Initiative. *Montanans Against Tax Hikes*,

11

¶ 7 (citation and quotation omitted). And we must intervene "when a ballot statement's language would prevent a voter from casting an intelligent and informed ballot." *Montanans Against Tax Hikes*, ¶ 7 (citations omitted). Here, the Attorney General's revised ballot statement begins as follows: "CI-***, if passed, limits artificial person powers to only those powers granted by statute. Artificial persons would not have any other powers under the Montana Constitution." The first sentence is clear and explanatory; the second sentence is argumentative, adding nothing expositive that was not expressed in the first sentence. TEI points out that this reference to the Montana Constitution appears to be based on the Attorney General's subjective interpretation of CI-135, which we previously rejected. *TEI I*, ¶ 13 ("Contrary to the Attorney General's assertion, [CI-135] speaks only to powers, not rights, and it does not expressly revoke any constitutional rights."). While we recognize that the Attorney General used the word "powers" rather than "rights" in his revised ballot statement, he uses it in such a way as to be synonymous, likely misleading a layperson into believing that CI-135 expressly revokes constitutional rights. We therefore conclude the Attorney General's ballot statement does not meet the requirements of § 13-27-212, MCA, in this respect.

¶20    *Issue 3. Shall this Court reject the Attorney General's revised ballot statement, alter TEI's proposed ballot statement, and certify that amended statement to the Secretary of State?*

¶21    TEI requests this Court to modify its proposed ballot statement and certify it to the Secretary of State pursuant to this Court's authority under § 13-27-605, MCA. Under § 13-27-605(3)(c)(ii), MCA, if this Court determines the ballot statements do not meet the requirements of § 13-27-212, MCA, we may either order the Attorney General to revise

12

the ballot statements within five days or certify to the Secretary of State ballot statements we determine meet those requirements. Our determinations of Issues One and Two inform our decision here.

¶22 First, as explained in Issue One, no authority precludes the Attorney General from revising a ballot statement as he sees fit once he articulates a basis for finding the proponent's proposed ballot statement statutorily noncompliant, subject to this Court's review of the sufficiency determination under § 13-27-605, MCA. As a threshold matter, we agreed that TEI's proposed ballot statement was statutorily noncompliant. Thus, the Attorney General had the authority to revise it, so long as his revised ballot statement complies with § 13-27-212, MCA. As explained in Issue Two, we considered TEI's objections to the Attorney General's revised ballot statement and ultimately concluded that, except for one sentence, the Attorney General's revised ballot statement is statutorily compliant. Taking into account the ballot statements prepared by TEI and the Attorney General, and their arguments thereto, and further taking into account that the Attorney General, having found TEI's proposed ballot statement not statutorily compliant and articulating the basis for his determination, has discretion to choose the language of the ballot statement, we approve the Attorney General's revised statement, with the removal of one sentence as set forth in Issue Two. Pursuant to § 13-27-605(3)(c)(ii), MCA, we have amended the Attorney General's revised ballot statement to comply with § 13-27-212, MCA.

13

¶23   IT IS ORDERED that the petition for original jurisdiction is ACCEPTED and GRANTED as an original proceeding in the form of a declaratory judgment action under § 13-27-605, MCA.

¶24   IT IS FURTHER ORDERED that the Court CERTIFIES the following ballot statement to the Secretary of State:

> CI-***, if passed, limits artificial person powers to only those powers granted by statute. Artificial persons include non-profits, trusts, partnerships, corporations, trade associations, labor unions, or unincorporated associations and includes all such entities doing business in Montana. CI-*** prohibits allowing artificial persons from having the power to expend money or anything of value to influence the outcome of a vote of the electorate. A violation of CI-***'s prohibition on contributing anything of value results in revoking the artificial person's legal status, which may only be reinstated subject to terms and conditions imposed by the Legislature. CI-***'s prohibition does not apply to distribution of bona fide news, commentary, or editorial content or to political committees.

The Clerk is directed to send a copy of this Opinion and Order to all counsel of record in this matter.

DATED this 9th day of June, 2026.

/S/ JAMES JEREMIAH SHEA


We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE

14