FILED

11/22/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 23-0634

OP 23-0634

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 226

MONTANANS FOR ELECTION REFORM
ACTION FUND, ROB COOK, FRANK GARNER,
BRUCE TUTVEDT, DOUG CAMPBELL,
TED KRONEBUSCH, and BRUCE GRUBBS,

        Petitioners,

   v.

AUSTIN KNUDSEN, in his official capacity as
MONTANA ATTORNEY GENERAL; and
CHRISTI JACOBSEN, in her official capacity as
MONTANA SECRETARY OF STATE,

        Respondents.

ORIGINAL PROCEEDING:     Petition for Declaratory Judgment

COUNSEL OF RECORD:

        For Petitioners:

                Rob Cameron, Jackson, Murdo & Grant, P.C., Helena, Montana

                Sean T. Morrison, Morrison Law Firm PLLC, Helena, Montana

                Martha Sheehy, Sheehy Law Firm, Billings, Montana

        For Respondents:

                Austin Knudson, Montana Attorney General, Michael Russell, Assistant Attorney General, Helena, Montana

                Emily Jones, Jones Law Firm, PLLC, Billings, Montana

                Decided:  November 22, 2023

Filed:

                _____
                                    Clerk

Chief Justice Mike McGrath delivered the Opinion and Order of the Court.

¶1 Petitioners Montanans for Election Reform Action Fund, et al. ("MER"), seek declaratory judgment on original jurisdiction under M. R. App. P. 14(4). MER argues it is entitled to declaratory judgment that: (1) the Attorney General's determination that the subject ballot issue is legally insufficient is incorrect; and (2) the Attorney General shall prepare a ballot statement pursuant to § 13-27-226, MCA, and forward the statement to the Montana Secretary of State within five days of this Court's decision. At our invitation, Attorney General Austin Knudsen has responded to the petition.

¶2 We consider the following issue:

*Did the Attorney General err in concluding that MER's proposed ballot issue is legally insufficient because it violates the separate-vote requirement of Article XIV, Section 11, of the Montana Constitution?*

¶3 On August 16, 2023, MER submitted the text of a proposed constitutional initiative and proposed ballot statements for the 2024 ballot to Secretary of State Christi Jacobsen. The Secretary designated the submission as Ballot Issue 12 ("BI-12"). BI-12 proposes to amend Article IV of the Montana Constitution to add a new Section 9. This section would change Montana's current party primary election system to a primary election for specified offices open to all candidates and voters, and the top four candidates for each of the specified offices would then advance to the general election.

¶4 MER submitted finalized initiative text and ballot statements to Jacobsen on September 5, 2023, and Jacobsen referred the matter to the Attorney General the following day. On October 13, 2023, the Attorney General determined that BI-12 is legally

2

insufficient because it violates Article XIV, Section 11, of the Montana Constitution. On October 16, 2023, the Secretary provided notice of the Attorney General's determination to MER. MER then petitioned this Court for declaratory relief on original jurisdiction on October 26, 2023.

¶5 Section 3-2-202(3)(a), MCA, provides this Court original jurisdiction to review the Attorney General's legal sufficiency determination in this matter. It is within the Attorney General's authority to determine whether a proposed ballot issue complies with the separate-vote provision of Article XIV, Section 11, of the Montana Constitution. *Monforton v. Knudsen*, 2023 MT 179, ¶ 11, 413 Mont. 367, ___ P.3d ___. Thus we consider whether the Attorney General correctly concluded that BI-12 violates Article XIV, Section 11, of the Montana Constitution, because it proposes multiple constitutional amendments.

¶6 BI-12 would amend Article IV of the Montana Constitution by adding a new Section 9 that would provide as follows:

> Section 9. Top-four primary election for certain offices. (1) As used in this section, the term "covered office" means the office of governor, lieutenant governor, secretary of state, auditor, attorney general, superintendent of public instruction, state representative, state senator, United States representative, United States senator, and other offices as provided by law.

> (2) The election for a covered office must consist of a primary election followed by a general election in which each of the four candidates for a covered office who receive the most votes in the primary election, and only those candidates, shall appear on the general election ballot.

> (3) In an election for a covered office, the following conditions apply:

(a) All candidates, regardless of political party preference, affiliation, nomination or lack of political party preference, affiliation, or nomination shall appear on the same primary election ballot separated by office.

(b) Qualified electors, regardless of political party preference or affiliation or a lack thereof, may participate in the primary election for each covered office for which they are eligible to vote.

(c) Each qualified elector may vote for no more than one candidate for each office in the primary election.

(d) If it cannot be determined which four candidates received the most votes in the primary election because two or more candidates are tied, the tie shall be broken as provided by law.

(e) If four or fewer candidates for a covered office qualify for the primary election ballot, a primary election is not required and all candidates shall appear on the general election ballot.

(f) A space for write-in candidates may appear on the primary election ballot as provided by law.

(g) A candidate may not be required to obtain the endorsement or nomination of any political party or organization in order to qualify for the primary election ballot.

(h) If the legislature requires candidates to obtain signatures to qualify for the primary election ballot, the number of signatures required may not exceed 5% of the total votes cast for the candidate elected for the same office in the last general election for that office.

(i) A candidate may choose to have displayed next to the candidate's name on the ballot the candidate's preference for a political party or that the candidate prefers no political party. The format options must be as follows: "Party Preference _____" or "No Party Preference."

(j) The ballot may not indicate that a candidate has been endorsed by or nominated by any political party.

(k) Each ballot must include a clear and conspicuous statement informing voters that a candidate's indicated political party preference does not imply that the candidate is nominated or endorsed by the political party or that the political party approves of or associates with the candidate.

4

(4) This section may not be construed to amend, repeal, or modify Article VI, section 2 of the Montana constitution.

(5) This section does not apply to special elections for covered offices.

¶7     Recently, we addressed the requirements of Article XIV, Section 11, of the Montana Constitution.

> The proper inquiry is whether, if adopted, the proposal would make two or more changes to the Constitution that are substantive and not closely related. We have employed a definition of substantive as "an essential part or constituent or relating to what is essential." Then, numerous factors may be considered in determining whether the provisions of a proposed constitutional amendment are closely related, including: whether various provisions are facially related, whether all the matters addressed by the proposition concern a single section of the constitution, whether the voters or the legislature historically has treated the matters addressed as one subject, and whether the various provisions are qualitatively similar in their effect on either procedural or substantive law. In summary, if a proposal would effect two or more changes that are substantive and not closely related, the proposal violates the separate-vote requirement because it would prevent the voters from expressing their opinions as to each proposed change separately.

*Monforton*, ¶ 12 (cleaned up).

¶8     Here, in the Legal Sufficiency Review, the Attorney General asserted that BI-12 fails to comply with Article XIV, Section 11, of the Montana Constitution, in four ways: (1) Section 3 adds provisions that are not closely related to the creation of a top-four primary because these provisions collectively "represent a choice [as to] whether Montana should allow political parties to nominate or endorse candidates on the ballot." (2) Section 1 provides a separate decision point for voters because it limits the applicability of this process to certain public offices while omitting others. (3) Section 3(h) provides a separate decision point because voters cannot vote for a top-four system that prohibits a

signature requirement or requires a higher signature threshold. (4) BI-12, as a whole and specifically within Sections 2 and 3(h), implicates Article IV, Section 3, of the Montana Constitution, because it limits the Legislature's constitutional authority to regulate the administration of elections.

¶9 MER argues, however, that each of these four components is integral to a top-four primary system. MER asserts that the proposed top-four primary system would not function correctly if it did not eliminate political party endorsements or nominations as a prerequisite to appearing on the ballot, identify the offices to which the system would apply, and limit signature-gathering requirements.

¶10 MER first argues that the Attorney General has misconstrued the effect of Section 3's provisions on political party nominations. Although the Attorney General concluded that these provisions affect political parties' ability to nominate or endorse candidates, MER asserts that they do not interfere with political parties' ability to do so. MER asserts that the Attorney General erroneously refers to the primary election under BI-12 as an "all-party" primary when it would actually create an open primary. MER points to *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 453, 128 S. Ct. 1184, 1192 (2008), in which the U.S. Supreme Court upheld the constitutionality of a similar open primary system, explaining that Washington's proposed primary system "does not, by its terms, choose parties' nominees. . . . The law never refers to the candidates as nominees of any party, nor does it treat them as such. . . . Whether parties nominate their own candidates outside the state-run primary is simply irrelevant." We agree with MER that the Attorney General is incorrect as to the effect that Section 3 would have on

6

political party nominations; because it does not affect those nominations, it would not create a separate decision point requiring a separate vote.

¶11 MER next argues that Section 1's specification of offices to which the open primary system would apply is closely related to BI-12's purpose. It asserts that BI-12 would apply to specific federal and statewide partisan offices but not to non-partisan or local offices. It argues that the Attorney General erred in concluding that the question of which offices to include or exclude from this system creates a separate decision point for voters because non-partisan and local office elections are distinct from federal and state partisan offices, and it would be impractical to require voters to vote on the inclusion or exclusion of every office separately. MER argues that requiring a separate vote on each and every elected office would unduly restrict constitutional change. *Mont. Ass'n of Counties v. State*, 2017 MT 267, ¶ 30, 389 Mont. 183, 404 P.3d 733 ("MACo"). Rather, MER argues, the enumerated offices present the voters with a binary choice: apply the top-four system to all federal and statewide partisan offices or reject it.

¶12 In *MACo*, ¶ 15, we explained that the separate-vote requirement of Article XIV, Section 11, of the Montana Constitution, has two objectives: (1) to avoid voter confusion by ensuring that proposals are not misleading, conceal their effects, or are not readily understandable; and (2) to avoid "logrolling," or combining unrelated amendments into a single measure that might not otherwise obtain majority support. The specification of offices to which BI-12 would apply does not run afoul of these objectives. Section 1 clearly sets forth which offices' elections would be affected by its enactment. It also does not combine unrelated amendments. As MER explains, BI-12 would affect federal and

statewide partisan offices but not nonpartisan and local offices. Moreover, in considering whether the specification of offices is closely related to the creation of a top-four primary system, we cannot envision how one could design a primary system without specifying the offices to which it would apply. We therefore conclude that the designation of "covered offices" in Section 1 does not violate the separate vote requirement of Article XIV, Section 11, of the Montana Constitution.

¶13 Next, MER argues that the Attorney General erred in concluding that the signature gathering provision in Section 3(h) creates a separate decision point for voters because the five-percent cap is an integral part of, and thus closely related to, the purpose of a top-four primary. MER asserts that the purpose of a top-four primary is to ensure that candidates can reasonably access the ballot. It argues that a reasonable signature cap is essential to ensuring that the Legislature cannot functionally convert a top-four primary into a top-two primary by requiring onerous signature gathering that would serve to bar candidates from the ballot.

¶14 In response, the Attorney General asserts that the Montana Constitution sets different signature requirements for different activities. It argues that this illustrates that determining the appropriate signature requirement is a separate consideration for which voters should be able to vote upon separately.

¶15 In *Monforton*, we upheld the Attorney General's rejection of a proposed ballot issue because, while amending only one section of the Montana Constitution, we observed, "To say that [Ballot Issue 2's] proposed amendments concern only one section of the Constitution is correct only in the sense that all of them are parked there, turning a short

8

constitutional section into a long one." *Monforton*, ¶ 14. We concluded that the ballot issue in that case would have both revised the existing language of Article VIII, Section 3, of the Montana Constitution, and also added a "new function" on the State's current valuation duty by also capping ad valorem taxes. *Monforton*, ¶¶ 15-16. We agreed with the Attorney General's explanation that "voters cannot express support for limiting increase in annual property valuations, while also opposing an overall cap on the level of taxes levied against a property," and we thus concluded that the proposed limitation on property valuations required a separate vote from the limitation on property tax increases. *Monforton*, ¶ 17.

¶16   Here, the signature-gathering limitation is not a separate function but is rather, as MER asserts, an integral part of the top-four primary system BI-12 proposes. We thus disagree with the Attorney General that the signature-gathering limitation is not closely related to the remainder of BI-12.

¶17   Finally, MER disagrees with the Attorney General's assertion that BI-12 is essentially a separate amendment because it implicates the Legislature's authority to regulate elections. In its response to the present petition, the Attorney General asserts, "BI-12's implicit limitation of the Legislature's constitutional authority amounts to yet another separate amendment requiring a separate vote."

¶18   Article IV, Section 3, of the Montana Constitution provides, "The legislature shall provide by law the requirements for residence, registration, absentee voting, and administration of elections. It may provide for a system of poll booth registration, and shall insure the purity of elections and guard against abuses of the electoral process." MER

9

argues that BI-12 does not implicate Article IV, Section 3, of the Montana Constitution because its adoption would not impede, hinder, or invade the Legislature's authority to regulate residence, voter registration, absentee voting, or the administration of elections.

¶19 While the Attorney General argues that BI-12 restrains the Legislature's ability to regulate primary elections, MER alleges that BI-12 would create a new primary system that the Legislature would then administer. In *MACo*, we held that a constitutional initiative that impliedly changed Montana's Constitution in numerous ways that we considered to be both substantive and not closely related was void for violating the separate-vote requirement of Article XIV, Section 11, of the Montana Constitution. *MACo*, ¶¶ 52, 54. In the present case, however, we agree with MER that BI-12 does not implicate Article IV, Section 3, of the Montana Constitution. Article IV, Section 3, grants the Legislature the authority to "provide by law the requirements," and BI-12 would not affect the Legislature's authority to "provide by law." Thus there is no separate amendment that would require a separate vote.

¶20 We therefore hold that the Attorney General erred in concluding that MER's proposed ballot issue is legally insufficient because it violates the separate-vote requirement of Article XIV, Section 11, of the Montana Constitution.

¶21 IT IS THEREFORE ORDERED that the petition for original jurisdiction is ACCEPTED and GRANTED as an original proceeding in the form of a declaratory judgment action under M. R. App. P. 14(4).

¶22   IT IS FURTHER ORDERED that the Attorney General shall prepare a ballot statement pursuant to § 13-27-226, MCA, and forward the statement to the Montana Secretary of State within five days of this Opinion and Order.

The Clerk is directed to send a copy of this Opinion and Order to all counsel of record in this matter.

DATED this 22nd day of November, 2023.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON
/S/ JIM RICE