FILED

11/18/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 25-0730

OP 25-0730

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 268

MONTANANS FOR NONPARTISAN COURTS,

Petitioner,

v.

AUSTIN KNUDSEN, in his official capacity as
MONTANA ATTORNEY GENERAL,

Respondent.

ORIGINAL PROCEEDING:      Petition for Declaratory Judgment

COUNSEL OF RECORD:

For Petitioner:

Raph Graybill, Rachel Parker, Graybill Law Firm, PC, Great Falls, Montana

Alex Rate, ACLU of Montana, Missoula, Montana

For Respondent:

Austin Knudsen, Montana Attorney General, Michael Russell, George Carlo L. Clark, Assistant Attorneys General, Helena, Montana

Decided: November 18, 2025

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion and Order of the Court.

¶1     Petitioner Montanans for Nonpartisan Courts (MNC), seeks declaratory judgment on original jurisdiction under M. R. App. P. 14(4) and asks this Court to declare that Ballot Issue 6 (BI-6) proposes a single constitutional amendment under Article XIV, Section 11, of the Montana Constitution, and this proposed initiative is legally sufficient.   At our invitation, the Attorney General has responded in opposition to MNC's petition.

¶2     BI-6 would amend Article VII of the Montana Constitution by adding the following: (1) Judicial elections shall remain nonpartisan.   (2) Any new court created after this amendment becomes effective must consist of judges elected on a nonpartisan basis.   The proposed initiative was submitted, with proposed ballot statements, to the Secretary of State on August 15, 2025.   The Secretary forwarded the proposed initiative and ballot statements to the Legislative Services Division, which completed its review on August 28, 2025.

¶3     On October 9, 2025, the Attorney General concluded BI-6 was not legally sufficient pursuant to §§ 13-27-226(1), (2), MCA.   In the memorandum regarding his legal sufficiency review, the Attorney General concluded, in relevant part, that BI-6 was not legally sufficient because it violates the separate-vote requirement of Article XIV, Section 11, of the Montana Constitution.   Since we have concluded that the separate-vote issue is dispositive, we do not consider the Attorney General's additional arguments that the phrase "new court" is ambiguous or that BI-6 may conflict with CI-132.   *See Monforton v. Knudsen*, 2023 MT 179, ¶ 5, 413 Mont. 367, 539 P.3d 1078.

2

¶4      MNC challenges the Attorney General's legal sufficiency determination pursuant to § 13-27-605(5), MCA.  It is within the Attorney General's authority to determine whether a proposed ballot issue complies with the separate-vote provision of Article XIV, Section 11, of the Montana Constitution.  *Monforton*, ¶ 11.  Section 3-2-202(3)(a), MCA, provides this Court with original jurisdiction to review the Attorney General's legal sufficiency determination in this matter.  We therefore consider whether the Attorney General correctly concluded that BI-6 is legally insufficient because it violates the separate-vote provision of Article XIV, Section 11, of the Montana Constitution.

¶5      We consider the following issue:

*Does BI-6 violate the separate-vote requirement of Article XIV, Section 11, of the Montana Constitution?*

¶6      Article XIV, Section 11, of the Montana Constitution, provides, "If more than one amendment is submitted at the same election, each shall be so prepared and distinguished that it can be voted upon separately."  The clear import of this provision allows voters to express their separate opinion as to each proposed constitutional amendment.  The separate-vote requirement was designed to aid voters in casting their votes on constitutional issues, and as a check on the possible action of grouping several issues under one innocuous title.  *Mont. Ass'n of Counties v. State*, 2017 MT 267, ¶ 15, 389 Mont. 183, 404 P.3d 733 (citation and internal quotation omitted) ("MACo").  Voters do not have the opportunity to consider, discuss, and potentially change constitutional amendments proposed by initiative in the same way the Legislature does with those proposed by referendum.  Therefore, the separate-vote requirement serves as an important check on the initiative process,

3

confirming the integrity of the vote and ensuring the voters actually approve of a particular amendment. *MACo*, ¶ 18.

¶7 The separate-vote requirement has two well-recognized objectives: (1) to avoid voter confusion and deceit of the public by ensuring proposals are not misleading or the effects of which are concealed or not readily understandable; and (2) to avoid "logrolling," or combining unrelated amendments into a single measure which might not otherwise command majority support. *MACo*, ¶ 15. Montana's separate-vote test asks whether "the proposal would make two or more changes to the constitution that are substantive and that are not closely related." *MACo*, ¶ 27 (citation omitted). We have enumerated factors to consider in determining whether a proposed initiative violates the separate-vote requirement:

> We have employed a definition of substantive as "an essential part or constituent or relating to what is essential." Then, numerous factors may be considered in determining whether the provisions of a proposed constitutional amendment are closely related, including: whether various provisions are facially related, whether all the matters addressed by the proposition concern a single section of the constitution, whether the voters or the legislature historically has treated the matters addressed as one subject, and whether the various provisions are qualitatively similar in their effect on either procedural or substantive law.

*Montanans for Election Reform Action Fund v. Knudsen*, 2023 MT 226, ¶ 7, 414 Mont. 135, 545 P.3d 618 (quoting *Monforton*, ¶ 12). The Attorney General argues that BI-6 fails this test because it proposes two substantive changes to the Montana Constitution that the Legislature has historically treated as different subjects and which have qualitatively different effects on substantive law.

4

¶8　The Attorney General found BI-6 violates the separate-vote requirement because it contains two distinct questions: (1) whether the Montana Constitution should be amended to require that all existing elected judicial offices be elected in nonpartisan elections; and (2) whether the Montana Constitution should be amended to require that any new court created under Article VII, Section 1, of the Montana Constitution, be elected. He opined the choice to require judicial elections be nonpartisan is separate from the choice to require judges to be elected and not appointed.

¶9　In challenging the Attorney General's determination, MNC asserts BI-6 satisfies the separate-vote requirement, consistent with the Montana Constitution and with this Court's previous analysis of the separate-vote requirement, because "[i]t constitutionalizes the proposition that judicial officers in Montana should be accountable to the people through nonpartisan election."

¶10　Although MNC maintains that BI-6 is "a single, comprehensive policy to secure Montana's system of nonpartisan judicial elections now and into the future," the Attorney General counters that, in *Monforton*, we rejected a singular goal or purpose as being sufficient to meet the separate-vote requirement. In that case, the proposed initiative's "single purpose [was] limiting property tax increases." *Monforton*, ¶ 13. However, we concluded a "singular purpose" was insufficient where the provisions of the proposed initiative were not "qualitatively similar in their effect" and had been treated separately historically. *Monforton*, ¶ 16 (citing *MACo*, ¶ 29). The Attorney General asserts that, even if a proposed initiative has an overarching goal, it still must allow the voters to vote on each substantive change that is not closely related. He argues that BI-6's sections must be

5

offered to voters for two separate votes: one to give voters the choice to require all judicial elections to be nonpartisan and one to give voters the choice to require that judges on any court created in the future must be elected.

¶11   The Attorney General concedes BI-6 would affect a single section of the Montana Constitution and its provisions are facially related. However, he points out that in *Monforton*, we affirmed his determination that a proposed initiative violated the separate-vote requirement even though it affected a single section of the Constitution and contained facially related provisions. In *Monforton*, the proposed initiative would have amended a single section of Article VIII to base the taxable value of real property on its value at the time of purchase, to limit annual increases of a property's taxable value, and to limit the total tax to 1% of the property's value. *Monforton*, ¶ 3. We concluded the proposed initiative consisted of "independent functions, while connected to a singular purpose of taxing property, and thus 'related' in that purpose, are not 'qualitatively similar in their effect' within the property tax process . . . . They are, in fact, separate decisions—a valuation decision by the executive branch, and a millage decision by local jurisdictions . . . ." *Monforton*, ¶ 16 (internal citation omitted). The Attorney General asserts that here, like in *Monforton*, we cannot end our inquiry into the separate-vote requirement based on BI-6's amendment of a single section and facially related provisions.

¶12   MNC notes that courts which currently allow for appointed judges would continue to do so under BI-6; only newly created courts would require that judges be elected. MNC characterizes this section as an "anti-circumvention provision." However, the Attorney General alleges the second section would have a greater-reaching impact, creating "a new

6

dictate on how judges may be selected for [certain] courts that departs from historical practice."

¶13   As noted above, one of the objectives of the separate-vote requirement is, in part, to avoid voter confusion and ensure that the effect of proposals are neither concealed or not readily understandable. *MACo*, ¶ 15. In his response to MNC's petition, the Attorney General points out that "BI[-]6 materially alters how Montana has historically established and provided for judges of courts of limited jurisdiction." With no guidance as to what does, or does not, constitute a "new court," BI-6 could have the effect of prohibiting the Governor from appointing judges to fill vacancies on an interim basis until an election can be held. Or, it could affect the appointment of judges to oversee specialty courts. The question, however, is not how BI-6, if passed, should be interpreted, but whether the voters could readily understand the effect of section (2) of BI-6. We do not believe voters will readily understand that BI-6 may cause some courts to have appointed judges while other courts with the same scope of jurisdiction will have elected judges solely due to the date of the creation of the court. Thus BI-6 fails to meet one of the objectives of the separate-vote requirement.

¶14   The Attorney General also contends the Legislature has historically treated the issue of nonpartisan judicial elections separately from the issue of whether judges are elected or appointed. Judicial offices subject to election are currently nonpartisan elections by statute. Title 13, chapter 14, part 2, MCA. However, not every judicial office is an elected office. Article VII, Section 1, of the Montana Constitution, provides, "The judicial power of the state is vested in one supreme court, district courts, justice courts, and such other courts as

7

may be provided by law." Certain judicial offices are subject to election under the Constitution. Art. VII, § 5(1), Mont. Const. (county justice of the peace shall be elected); Art. VII, § 8(1), Mont. Const. (Supreme Court and district court judges shall be elected). Some courts of limited jurisdiction the Legislature has created by statute, including municipal court judges and city court judges, are also elected. Section 3-6-201(2), MCA (municipal court judge must be elected at a general election); § 3-11-201, MCA (city judges are elected or appointed). Other statutorily created courts of limited jurisdiction, including the Water Court, Workers' Compensation Court, city courts, and small claims courts have appointed judges. Section 3-7-221(1), MCA (Chief Justice appoints chief water judge); § 2-15-1707(2), MCA (governor shall appoint workers' compensation judge); § 3-11-201, MCA (city judges are elected or appointed); § 3-12-201(1), MCA (judges of judicial district shall appoint small claims court judge). It is undisputed that BI-6, if enacted, would preclude the Legislature from creating any new court which is filled by appointment.

¶15 MNC alleges, "there is no serious argument that [BI-6's] subsections present tradeoffs between unrelated policies that, individually would not command public support . . . ." We disagree. It is conceivable that voters may have differing opinions as to whether judicial elections should be nonpartisan and whether it should be required that courts created in the future have elected judges. A voter may prefer that judges be appointed where permitted by law while concurrently preferring that, if judges are required by law to be elected, such election should occur by a nonpartisan ballot. Combining these amendments, which are not closely related, into a single measure may secure approval of BI-6 by compelling voters, who approve of either nonpartisan judicial elections or that

8

judges be elected rather than appointed, to support the amendment, the type of "logrolling" that Article XIV, Section 11, of the Montana Constitution, intends to avoid. *MACo*, ¶ 15. We concluded that *Monforton's* proposed initiative violated the separate-vote requirement because voters would not be able to express support for limiting the increase in annual real property valuations while also opposing an overall cap on the level of taxes levied against a property. *Monforton*, ¶ 17. Similarly, BI-6 would not allow voters to exercise separate votes on separate issues as to whether judicial elections should be nonpartisan and whether courts created in the future should be required to have elected judges. We reject MNC's contention that BI-6 "secures a single policy: requiring nonpartisan judicial election," because it contains a second policy of barring judicial appointments. We conclude BI-6 does not meet the separate-vote objective of avoiding "logrolling."

¶16 We further disagree with MNC that the current matter is akin to the dispute presented in *Montanans for Election Reform*. In that case, the proposed initiative would have added a new Section 9 to Article IV of the Montana Constitution to create a top-four primary election for certain offices. *Montanans for Election Reform*, ¶ 6. We rejected the Attorney General's determination that the proposed initiative violated the separate-vote requirement, including his argument that the question of whether political parties could nominate or endorse candidates on the ballot was a separate choice from which offices would have a top-four primary election. We explained, "we cannot envision how one could design a primary system without specifying the offices to which it would apply." *Montanans for Election Reform*, ¶ 12. In the present case, the first section of BI-6 specifies that the nonpartisan election requirement would apply to all judicial elections. The second

9

section, however, further provides that no new courts may seat judges via appointment. This presents a different issue than we considered in *Montanans for Election Reform*.

¶17    The clear import of Article XIV, Section 11, of the Montana Constitution, is that voters must be allowed to express their separate opinion as to each proposed amendment. Accordingly, this Court is obligated to ensure the voters have the opportunity to cast separate votes for separate amendments without encumbering the people's right to amend the Constitution. *MACo*, ¶ 25. We therefore deny MNC's request that we declare BI-6 legally sufficient because we must ensure the voters would have the opportunity to cast separate votes for the separate amendments found within that proposed initiative.

¶18    IT IS ORDERED that Petitioner's request to overrule the Attorney General's legal sufficiency determination is DENIED. The Attorney General's rejection of BI-6 is AFFIRMED.

The Clerk is directed to send a copy of this Opinion and Order to all counsel of record in this matter.

DATED this 18th day of November, 2025.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ JIM RICE