FILED

01/06/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 25-0770

OP 25-0770

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 2

TRANSPARENT ELECTION INITIATIVE,

     Petitioner,

  v.

AUSTIN KNUDSEN, in his official capacity as
MONTANA ATTORNEY GENERAL; and
CHRISTI JACOBSEN, in her official capacity as
MONTANA SECRETARY OF STATE,

     Respondents.

ORIGINAL PROCEEDING:    Petition for Declaratory Judgment

COUNSEL OF RECORD:

     For Petitioner:

          Matthew T. Cochenour, Cochenour Law Office, PLLC, Helena,
          Montana

     For Respondents:

          Austin Knudsen, Montana Attorney General, Michael Russell,
          Michael Noonan, Assistant Attorneys General, Helena, Montana

     For Amicus Montana Chamber of Commerce:

          Dale Schowengerdt, Landmark Law, PLLC, Helena, Montana

     For Amicus Montana Mining Association:

          Gage Hart Zobell, Ben D. Kappelman, Dorsey & Whitney LLP,
          Missoula, Montana

Decided:  January 6, 2026

Filed:

_____
Clerk

2

Justice Jim Rice delivered the Opinion and Order of the Court.

¶1    Petitioner Transparent Election Initiative (TEI), seeks declaratory judgment on original jurisdiction and, pursuant to § 13-27-605(5), MCA, asks this Court to declare the Attorney General erred in determining Ballot Issue 4 (BI-4) is legally insufficient because it violates the separate vote requirement of Article XIV, Section 11, of the Montana Constitution, and to direct the Attorney General to either approve TEI's ballot statements or prepare and forward ballot statements to the Secretary of State within five days.  TEI further asks this Court to strike the Attorney General's fiscal statement and statement of material harm.  At our invitation, the Attorney General has responded in opposition to TEI's petition.  With leave of Court, the Montana Mining Association and the Montana Chamber of Commerce have filed amicus briefs supporting the Attorney General's determination.

¶2    BI-4 would amend Article XIII of the Montana Constitution by creating a new Section 8 that would define the constitutional rights, powers, and privileges held by an "artificial person," including corporations, nonprofit corporations, limited liability companies, unincorporated associations, and foreign entities authorized to transact business or hold property in Montana.  BI-4 proposes the following language:

> **Section 8.  Powers of artificial person.**  (1) An artificial person exists only by grant of the state and may not have powers or privileges except those this constitution expressly provides.
>
> (2)(a) The legislature may by statute create an artificial person consistent with subsection (1).
>
> (b) The people never did, and do not, intend the powers of an artificial person to include election activity or ballot issue activity.  This section revokes all

powers granted to an artificial person and regrants only those powers that the people consider necessary or convenient to carry out an artificial person's lawful business or charitable purposes as described in subsection (6)(b). Powers related to election activity or ballot issue activity may not be considered necessary or convenient to those purposes under any circumstances.

(3)(a) The creation and continued existence of an artificial person is not a right but a conditional grant of legal status by the state and remains subject to complete withdrawal at any time. All powers previously granted to an artificial person under Montana law are revoked in their entirety. An artificial person operating under the jurisdiction of this state may not possess any power unless specifically granted by this constitution. A power revoked by this subsection (3)(a) may not be revived except by a constitutional provision that expressly reauthorizes that power in clear and specific terms.

(b) Nothing in subsection (3)(a) may be construed to invalidate, impair, or modify any existing contract, debt instrument, security, or other legal obligation validly entered into before January 1, 2027, provided, however, that nothing herein authorizes election activity or ballot issue activity after January 1, 2027. Nothing in subsection (3)(a) may be construed to impair the continued existence or legal personhood of an artificial person, or to affect its ability to initiate, defend, or participate in legal actions or to maintain or remain eligible for licenses, permits, or approvals previously granted under state or federal law.

(4)(a) An artificial person possesses the powers defined in subsection (6)(b), unless its organizational documents limit the exercise of these powers, and does not possess powers beyond those expressly granted by the constitution. The constitution does not grant or recognize any power of an artificial person to engage in election activity or ballot issue activity, except as provided in subsection (4)(c). The regrant of powers under this subsection (4)(a) takes legal effect simultaneously with the revocation described in subsection (3)(a).

(b) Any language in the articles of incorporation, articles of organization, articles of association, or other organizational documents purporting to directly or indirectly confer election activity authority or ballot issue activity authority to an artificial person is void.

(c) Political committees registered under Montana law or federal law are entities created for the purpose of engaging in election activity and ballot issue activity. Political committees may be granted the power to engage in

those activities provided they exist solely for that purpose and claim no charter privilege other than limited liability. This constitution does not grant any other artificial person the power to engage in election activity or ballot issue activity.

(d) A charter privilege may not be construed to authorize election activity or ballot issue activity. An artificial person that exercises election activity authority or ballot issue activity authority, unless expressly permitted to do so under subsection (4)(c), initially forfeits all charter privileges as a matter of law. The legislature shall, during its first regular session following January 1, 2027, enact procedures that allow reinstatement on full disgorgement, certification of future compliance, and any additional conditions it considers appropriate.

(5) Any election activity or ballot issue activity conducted by an artificial person that is not a political committee is ultra vires and void and results in the forfeiture of charter privileges as provided in subsection (4)(d). An artificial person that conducts election activity or ballot issue activity is also subject to civil action by a member, shareholder, or the attorney general for injunctive relief, disgorgement, and confirmation or enforcement of the forfeiture. The legislature shall, during its first regular session following January 1, 2027, enact procedures to enforce this subsection.

(6) As used in this section, unless the context requires otherwise, the following definitions apply:

(a) "Artificial person" means an entity whose existence or limited liability shield is conferred by Montana law, including, without limitation:

(i) business corporations;

(ii) nonprofit corporations, such as public-benefit, mutual-benefit, and religious organizations;

(iii) limited liability companies;

(iv) unincorporated associations, limited liability partnerships, statutory trusts, professional corporations, cooperatives, and any successor form; and

(v) foreign entities that are authorized to transact business, are otherwise transacting business, or hold property in Montana. A foreign entity that directly or indirectly undertakes, finances, or directs election activity or

5

ballot issue activity in the state of Montana is conclusively considered to be transacting business in this state.

(b) "Artificial person powers" means powers necessary or convenient to carry out lawful business or charitable purposes, as the legislature may provide, excluding any power to directly or indirectly engage in election activity or ballot issue activity.

(c)(i) "Ballot issue activity" means paying, contributing, or expending money or anything of value to support or oppose a ballot issue or initiative.

(ii) The term does not include any bona fide news story, commentary, or editorial distributed through the facilities of a broadcasting station or of any print, online, or digital newspaper, magazine, blog, or other periodical publication, unless the broadcasting, print, online, or digital facility is owned or controlled by a political party, a political committee, or a candidate.

(d) "Charter privilege" means any benefit to an artificial person that exists only because the state of Montana confers it, such as, without limitation, limited liability, perpetual duration, succession in its corporate name, and tax credits and abatements.

(e)(i) "Election activity" means paying, contributing, or expending money or anything of value to support or oppose a candidate, a political party, or a political committee.

(ii) The term does not include any bona fide news story, commentary, or editorial distributed through the facilities of a broadcasting station or of any print, online, or digital newspaper, magazine, blog, or other periodical publication, unless the broadcasting, print, online, or digital facility is owned or controlled by a political party, a political committee, or a candidate.

(f) "Foreign entity" means an artificial person that is organized or exists under the laws of a jurisdiction other than the state of Montana.

**Section 2. Severability.** If any provision of [this act], or its application to any person or circumstance, is invalid, the remaining provisions and applications that are severable remain in effect. In such event, no prior grant of corporate powers may be revived or reinstated, nor shall any court construe [this act] to authorize broader powers than are expressly conferred in [this act].

**Section 3. Effective date.** If approved by the electorate, [this act] is effective January 1, 2027.

¶3     TEI presents the following issues:

1.  *Does BI-4 violate the separate-vote requirement of Article XIV, Section 11, of the Montana Constitution?*

2.  *Did the Attorney General have the authority to prepare a fiscal statement where OBPP's fiscal note determination occurred beyond the statutory timeframe?*

3.  *Is the Attorney General's Statement of Material Harm accurate?*

Because we conclude BI-4 violates the separate-vote requirement of Article XIV, Section 11, of the Montana Constitution, we do not reach Issues Two and Three.

¶4     It is within the Attorney General's authority to determine whether a proposed ballot issue complies with the separate-vote provision of Article XIV, Section 11, of the Montana Constitution. *Monforton v. Knudsen*, 2023 MT 179, ¶ 11, 413 Mont. 367, 539 P.3d 1078. Section 3-2-202(3)(a), MCA, provides this Court with original jurisdiction to review the Attorney General's legal sufficiency determination in this matter. We therefore consider whether the Attorney General correctly concluded that BI-4 is legally insufficient because it violates the separate-vote provision of Article XIV, Section 11, of the Montana Constitution.

¶5     Article XIV, Section 11, of the Montana Constitution, provides, "If more than one amendment is submitted at the same election, each shall be so prepared and distinguished that it can be voted upon separately." The separate-vote requirement was designed to aid voters in casting their votes on constitutional issues, and as a check on the possible action of grouping several issues under one innocuous title. *Mont. Ass'n of Counties v. State*,

2017 MT 267, ¶ 15, 389 Mont. 183, 404 P.3d 733  (citation and internal quotation omitted) ("*MACo*").

¶6      The Attorney General concluded BI-4 violates the separate-vote requirement in several ways.  He first notes that BI-4's addition of new matter constitutes a change in and of itself.  *MACo*, ¶ 28.  He alleges BI-4 also proposes additional, implicit changes to the Montana Constitution: by revoking "[a]ll powers previously granted to an artificial person under Montana law," BI-4 would "amend several sections of the Montana Constitution by limiting their scope to individuals, rather than all persons"; BI-4 amends sections of the Montana Constitution by prohibiting "artificial persons" from exercising the rights contained within; and BI-4 amends Article XIII, Section 1, of the Montana Constitution, by voiding existing charters and then regranting their powers.  The Attorney General further determined BI-4's changes are not closely related, its definitions conflict with some statutory definitions, and BI-4 would affect diverse government functions across disparate areas of law.

¶7      TEI disputes that BI-4 will affect every constitutional provision the Attorney General cites.  However, it agrees that BI-4, if passed, will significantly affect the way in which the Montana Constitution applies to artificial persons because artificial persons would enjoy only those powers or privileges expressly provided.  TEI maintains that a ballot initiative does not run afoul of the separate-vote requirement merely by affecting more than one part of the Montana Constitution so long as every provision of the initiative is integral and closely related.  TEI asserts that BI-4 implements one directive: the State shall no longer grant corporations and similar entities the power to spend in politics.  TEI

8

explains that BI-4 functions as a single, unified scheme, with each provision qualitatively similar in effect and integral to BI-4's unified framework:

> Subsection (1) states the premise that artificial persons exist only by state grant and may exercise only powers expressly provided; subsection (2) directs that the Legislature act consistently with that principle and specifies the people's intent regarding election-related activity; subsection (3) revokes prior grants of power and provides a transitional safe harbor to protect existing contracts and obligations; subsection (4) regrants powers and defines their scope and the parameters critical to implementation; subsection (5) confirms that election activity and ballot issue activity are ultra vires; and subsection (6) defines BI-4's terms.

TEI contends none of BI-4's subparts are standalone, independent provisions and it would thus not make sense for voters to consider any provision separately from the whole. TEI argues each provision "has operative meaning only through its relationship to the amendment redefining the powers of artificial persons."

¶8    A singular goal or purpose is insufficient to meet the separate-vote requirement if the proposed initiative can be split into separate votes. *Montanans for Nonpartisan Courts v. Knudsen*, 2025 MT 268, ¶ 10, 425 Mont. 51, 579 P.3d 536 ("*MNC*") (citing *Monforton*, ¶ 13). In *Monforton*, the proposed initiative's "single purpose [was] limiting property tax increases." *Monforton*, ¶ 13. However, we concluded the proposed initiative violated the separate-vote requirement because it contained two separate decisions for voters: a "valuation decision" and a "millage decision." *Monforton*, ¶¶ 3, 16.

¶9    In *MNC*, the proposed constitutional initiative consisted of two subsections: the first declared that judicial elections would remain nonpartisan and the second declared that any new court must consist of judges elected on a nonpartisan basis. *MNC*, ¶ 2. Although proponent MNC asserted that the proposed initiative consisted of "a single, comprehensive

9

policy to secure Montana's system of nonpartisan judicial elections now and into the future," we agreed with the Attorney General that, even if a proposed initiative has an overarching goal, voters must be allowed to vote on each substantive change that is not closely related. *MNC*, ¶ 10. We upheld the Attorney General's determination that MNC's proposed initiative violated the separate-vote requirement because it would not allow voters to exercise separate votes on the separate issues of nonpartisan judicial elections and newly created courts having elected judges. *MNC*, ¶ 15.

¶10 In the present case, BI-4's addition of new matter, which creates a prohibition on artificial persons having any powers or privileges that are not expressly provided by the Montana Constitution, is one change. *MACo*, ¶ 28. BI-4 further revokes all existing powers that have been conferred on artificial persons and regrants limited powers, described as "only those powers that the people consider necessary or convenient to carry out an artificial person's lawful business or charitable purposes," "as the legislature may provide," and further provides that "[p]owers related to election activity or ballot issue activity" may not be regranted.

¶11 At a minimum, the new matter BI-4 would add to the Montana Constitution effectuates two changes: first, it limits artificial persons' powers and privileges to only such powers and privileges as are expressly provided by the Montana Constitution; and second, through a revocation and restoration process, it regrants artificial persons certain limited powers, excluding others. Although TEI explains that its intent is to prohibit artificial persons from having "the power to spend money or anything of value on election or ballot-issue activities," the effect of BI-4 is significantly broader, revoking *all* powers and

10

privileges and then regranting only those that fall within BI-4's definition of "artificial person powers"—"powers necessary or convenient to carry out lawful business or charitable purposes, as the legislature may provide, excluding any power to directly or indirectly engage in election activity or ballot issue activity." Unless and until the Legislature acts on this provision, all entities defined as "artificial persons" have no powers that exist under current law.

¶12    In *Montanans for Election Reform Action Fund*, we rejected the Attorney General's argument that the proposed ballot initiative in that case, which would have created a "top-four primary election for certain offices," violated the separate-vote requirement by specifying the offices to which the new election system would apply as part of a single initiative. *Montanans for Election Reform Action Fund v. Knudsen*, 2023 MT 226, ¶ 12, 414 Mont. 135, 545 P.3d 618 ("*MERAF*"). We concluded that the initiative's designation of "covered offices" did not violate the separate-vote requirement because the process of designing a primary system required specifying the offices for which the system was designed. *MERAF*, ¶ 12. *MERAF*'s initiative was designed to affect only federal and statewide partisan offices, but not nonpartisan and local offices. *MERAF*, ¶ 12. The language of the initiative reflected the scope of what the initiative intended to accomplish. In other words, the proposed initiative in *MERAF* created an election framework and then designated the offices that would fall within that framework. Here, TEI designated a target—the power to spend in politics—and casts a much wider net that revokes *all* powers. Just as in *MNC*, ¶ 15, where we found, "[a] voter may prefer that judges be appointed where permitted by law while concurrently preferring that, if judges are required by law to be

elected, such election should occur by a nonpartisan ballot," in this case, a voter may want to limit artificial persons' ability to spend money on election or ballot-issue activity but not limit any other powers that artificial persons may currently exercise in this state.

¶13     In *MACo*, ¶ 15, we explained:

> The separate-vote requirement has two well-recognized objectives. The first is to avoid voter confusion and deceit of the public . . . . The second is to avoid "logrolling" or combining unrelated amendments into a single measure which might not otherwise command majority support. By combining unrelated amendments, approval of the measure may be secured by different groups, each of which will support the entire proposal in order to secure some part, even though not approving all parts of a multifarious amendment.

¶14     Although BI-4 does not combine unrelated amendments in an attempt to secure support from different groups, it would force voters who support abolishing corporate spending "on elections or ballot issues" to also support, more broadly: 1) limiting the rights of other entities defined as "artificial persons," such as unincorporated associations and cooperatives; and 2) potentially limiting the powers of such organizations to engage in activities other than election and ballot issue activities in significant but unspecified other ways. The clear import of Article XIV, Section 11, of the Montana Constitution, is that voters must be allowed to express their separate opinion as to each proposed amendment. *MACo*, ¶ 15. Accordingly, this Court is obligated to ensure the voters have the opportunity to cast separate votes for separate amendments without encumbering the people's right to amend the Montana Constitution. *MACo*, ¶ 25. We therefore deny TEI's request that we declare BI-4 legally sufficient and reverse the Attorney General's contrary conclusion. Because we have concluded that the separate-vote issue is dispositive, we do not reach the remaining issues TEI has raised.

12

¶15     IT IS ORDERED that Petitioner's request to overrule the Attorney General's legal sufficiency determination is DENIED.   The Attorney General's rejection of BI-4 is AFFIRMED.

The Clerk is directed to send a copy of this Opinion and Order to all counsel of record in this matter.

DATED this 6th day of January, 2026.


/S/ JIM RICE


We Concur:

/S/ CORY J. SWANSON
/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ KATHERINE M. BIDEGARAY
/S/ JAMES JEREMIAH SHEA